565 F.Supp. 1 (1982)
UNITED STATES of America
v.
H & M, INC., Jack D. Murphy, William H. Quigley, Jr.
Crim. Nos. 82-00040-01, 82-00040-03 and 82-00040-04.
United States District Court, M.D. Pennsylvania.
June 15, 1982.
Richard S. Rosenberg, Richard A. Small, Dept. of Justice, Antitrust Div., Philadelphia, Pa., for plaintiff.
Richard W. Cleckner, Cleckner & Fearen, Harrisburg, Pa., for defendant.

MEMORANDUM
RAMBO, District Judge.
Presently before the court is the motion of defendants, H & M, Inc., William H. Quigley, Jr. and Jack D. Murphy, to change their plea from not guilty to nolo contendere. Defendants and co-conspirators are charged with conspiring to allocate customers, rig bids and fix prices on motopaving projects in a four county area of Pennsylvania in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. The United States government opposes defendants' motion. On June 11, 1982, a hearing was held, in camera, to determine the merits of the motion. For *2 the reasons set forth below, the motion will be denied.
Rule 11(b) of the Federal Rules of Criminal Procedure provides that a defendant may plead nolo contendere only with the consent of the court after the court has considered the views of the parties and the interests of the public in the effective administration of justice. Acceptance of the plea is discretionary with the court. In exercising its discretion, this court will consider the factors outlined in United States v. Standard Ultramarine & Color Co., 137 F.Supp. 167, 170-72 (S.D.N.Y.1955), which also involved an indictment under § 1 of the Sherman Antitrust Act. These factors include:
1. the nature of the claimed violations;
2. how long the violations persisted;
3. the size and power of the defendants in the particular industry;
4. the impact of the condemned conduct upon the economy;
5. whether a greater deterrent effect will result from conviction rather than from acceptance of the plea;
6. the view of the Attorney General;
7. whether under the circumstances of the case it is in the public interest to deprive private parties of the benefits of the prima facie case under § 5 of the Clayton Act, 15 U.S.C. § 16 if the defendants should be found guilty upon trial.
Defendants addressed several of these factors at the June 11 hearing. They urged consideration of the fact that the alleged illegal activity terminated five years ago. They also argued that the business and individuals allegedly involved in the conspiracy profited little, if any, from the alleged illegal activity. Additionally, they stressed that H & M, Inc. played a small role in the motopaving industry and thus could not have had any significant impact on the alleged illegal practices or their economic effect. Defendants also argued that the impact of the alleged illegal conduct on the economy was insubstantial. They contended that even if bid rigging occurred the difference between the submitted bids amounted to pennies. They pointed out that the alleged conspiracy only covered a four county area. Defendants also contended that acceptance of their nolo plea is in the public interest and would serve the effective administration of justice. Finally they pointed out that they are presently defending against a class action civil suit. If their nolo plea is rejected, trial in the instant action could take three to six weeks. Thus, they foresee substantial legal expenses and fear that defendant H & M, Inc. may face possible bankruptcy.
The court is not convinced that defendants have presented special circumstances justifying acceptance of a nolo plea. They cite no cases supporting their argument that the court should consider the economic circumstances of individual defendants in deciding whether to accept a nolo contendere plea. Common sense dictates against consideration of this factor. Defendants who may have been in an economic position to bring about the alleged anti-competitive activity should not later be allowed to avoid the defense of such claims because of potential economic sacrifices. If defendants are unable to defend themselves for economic reasons, they may apply for relief under the Criminal Justice Act, 18 U.S.C. § 3006A.
At this point the court also wishes to address the fact that defendants apparently lost money during the period of illegal activity, which defendants identify as a factor of special circumstance. The court finds it inappropriate to consider whether a defendant was a successful conspirator in assessing a nolo plea.
The court emphasizes that the alleged illegal practices consisted of bid rigging, customer allocation and price fixing. These are per se violations which go to the heart of the Sherman Act.
The fact that defendants' alleged activity ceased more than five years ago must be measured against the duration of the activity and the reasons why it ceased. The indicted activity allegedly occurred from 1967 to 1977, a period of ten years. This court takes judicial notice that civil antitrust litigation began in this district in 1977 *3 which involved some of the defendants in the instant suit, among others, involving aspects of the road paving industry. It is not unreasonable to assume that the civil litigation curtailed any continuation of the alleged illegal criminal practices.
The court also must take into account the fact that the defendant corporation, H & M, Inc. was one of four of the major motopavers in the four county area covered by the indictment. Defendants Jack D. Murphy and William H. Quigley, Jr. are alleged to have instigated, acquiesced in and approved of the alleged activity respectively. The degree of possible culpability of the defendants coupled with other factors compels the court to reject the nolo plea.
The impact of the condemned conduct upon the economy is alleged to have been lack of competitive bidding on municipal motopaving projects. The government contends that competitive bids could have saved the municipalities $1.00 per ton on such projects. The government also indicated at the hearing that the interstate oil industry was affected by motopaving, the object of the conspiracy. The court concludes that the impact of the condemned conduct on the economy was not insubstantial.
The court also concludes that accepting a nolo plea in this case would not serve as a deterrent to antitrust activity. In order to deter antitrust activity and to enable effective enforcement of antitrust laws it is essential that more than token punitive measures are taken against offending parties. Even though the defendants would be subject to the same penalty as if they pled guilty, the per se nature of the alleged activities, the alleged degree of defendants' culpability and the harm caused to the public warrants more than a "slap on the wrist," which is often the public view of a nolo plea.
The court also believes that under the circumstances of this case it is not in the public interest to deprive civil claimants of the benefits of a conviction at trial or a guilty plea as prima facie evidence under § 5 of the Clayton Act, 15 U.S.C. § 16. The pending class action civil suit against defendants is not the ordinary "private" civil litigation incident to a criminal antitrust suit. Since the municipalities covered by the indictment operate on tax based structures, the ultimate victims of defendants' alleged illegal conduct are the tax payers. The public interest would be harmed if these municipalities were unable to introduce a prior final criminal judgment as prima facie evidence of a Clayton Act violation.
Finally the court is not satisfied that interests of judicial economy are best served by acceptance of a nolo plea. The court concedes that the duration of the trial will be affected by three less defendants, but a trial must still be held for the other co-defendants. This court believes that the interest of the public far outweighs a small consideration of judicial economy.
The court has not felt the need to rely upon the government's objection to the motion because the defendants have not presented any special circumstances that have any substance when measured by the factors set forth in U.S. v. Standard Ultramarine & Color Co., supra.
Finally, the court states, perhaps unnecessarily, that the rejection of the plea is no indication that it has any view as to the defendants' guilt or innocence. The motion is decided on public policy considerations. These defendants, as all defendants have the benefit of the presumption of innocence, which remains in their favor unless the government shall sustain its burden of establishing guilt beyond a reasonable doubt.