**UNITED STATES of America,**

v.

**YONKERS CONTRACTING COMPANY, INC., et al., Defendants.**

**No. 87 Crim. 560 (WCC).**

United States District Court, S.D. New York.

Oct. 24, 1988.

complaint and China Crown's counterclaims reveals that the plaintiff seeks more than the total

Ralph T. Giordano, Attorney, Dept. of Justice, Chief, Antitrust Div., New York City, for U.S.; Rebecca Meiklejohn, Edward Friedman, Attorneys, Dept. of Justice, Antitrust Div., of counsel.

Kelley Drye & Warren, New York City, for Peckman Materials Corp.; Robert E. Crotty, Alan R. Kusinitz, of counsel.

Kaplan, Kilsheimer & Foley, New York City, for Civil Plaintiff, Town of New Castle; Richard J. Kilsheimer, of counsel.

sought by China Crown.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Defendant Peckham Materials Corp. has moved, pursuant to Fed.R.Crim.P. 11(b), for leave to withdraw its plea of not guilty and enter a plea of *nolo contendere.* Defendant's motion is denied.

### Background

Defendants are charged with conspiring to rig bids for the sale of asphalt and for asphalt paving contracts in violation of Section 1 of the Sherman Act. The Government alleges that defendants' conspiracy affected numerous government contracts for the purchase of asphalt or for paving in Westchester County.

Defendants are also named in a class action pending in this Court brought on behalf of the County of Westchester and the local governmental entities who purchased asphalt from or contracted for paving by any of the defendants during the period from January 1, 1970 through December 31, 1985 (the "Civil Plaintiffs"). Judge Stewart has stayed the proceedings in that case, pending the conclusion of the trial in this criminal case.

Originally, all the defendants pleaded not guilty to the criminal charges. On July 18, 1988, however, I issued an opinion and order permitting defendant Westchester Colprovia Corporation ("Westchester Colprovia") to change its plea to *nolo contendere* because of that defendant's "unique circumstances." *United States v. Yonkers Contracting Co.,* 689 F.Supp. 339, 341 (S.D.N.Y.1988). The new plea was entered on September 19, 1988. Defendant Peckham Materials Corp. ("Peckham Materials") now asks for the same relief.

Peckham Materials and its predecessors have been in business in New York for over sixty years. The business began as a road construction company in 1924. Today, Peckham Materials operates blacktop, liquid asphalt and stone and gravel facilities in Chestertown, Hudson Falls, Middle Falls, Athens/Schaghticoke, Catskill, Portchester, and Patterson, New York. In addition, it operates a blacktop plant in New Milford, Connecticut, and a facility for the storage and sale of stone in Byram, Connecticut.

On June 1987, the Government filed a criminal indictment against Peckham, six other suppliers of asphalt in Westchester County, and seven individuals who are officers of the corporate defendants. The defendants were charged with a conspiracy allegedly commencing in the early 1970's and continuing through 1985.

During much of the period covered by the indictment, Peckham Materials was run by John S. "Jack" Peckham who became president of Peckham Industries, Inc. ("Peckham Industries"), Peckham Materials' parent, in 1965. Jack Peckham died in a helicopter crash on May 29, 1981.

Peckham Materials claims that it underwent a "change in management" after Jack Peckham's death. Indeed, while officers of five other corporate defendants were indicted, none of Peckham Materials' officers, directors, or employees was indicted.

Nevertheless, two of Peckham Materials' current officers were named in the Government's Supplemental Bill of Particulars, dated July 15, 1988, as unindicted co-conspirators: James V. DeForest is Peckham Materials' President and Joseph V. Kuch is a Vice President. While no member of the family is accused of any wrongdoing, Peckham Materials is still controlled by the Peckham family which owns approximately 72% of Peckham Industries' stock. Janet Peckham, Jack Peckham's widow, is Chairman of the Board. Her son, John R. Peckham is Executive Vice President.

In 1986, Peckham Materials adopted a written antitrust compliance policy. The policy is designed to ensure that its employees are aware of the antitrust laws. Peckham Materials' employees are required to certify, in writing, that they have read, understand, and will comply with Peckham Materials' antitrust policy.

As defendant points out, the indictment in this case is not the only charge that has been leveled at it for its alleged antitrust violations. Peckham Materials was also indicted in Connecticut and has pleaded *nolo*

*contendere* to those charges. In 1987, Peckham Materials settled for $80,000 a dispute with the State of Connecticut based on that indictment. In addition, from March 1986 to May 1988, the New York State Department of Transportation and the Office of General Services refused to award contracts to Peckham Materials. Until March 17, 1988 the Federal Highway Administration suspended Peckham Materials from participating in any federally funded projects.

*Discussion*

### I. *Civil Plaintiffs' Motion to File Amicus Curiae Brief*

█ Civil Plaintiffs asked this Court for leave to file a brief *amicus curiae*. Defendant Peckham Materials opposed this motion. The Court decided to grant Civil Plaintiffs' request to serve as *amicus curiae*, since acceptance of a *nolo contendere* plea by Peckham Materials could adversely affect the civil action, and since the additional brief would aid this Court in evaluating Peckham Materials' motion. *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir.1982) (district courts have broad discretion to appoint *amici curiae*); *see also* 1B J. Moore, J. Lucas & J. Currier, *Moore's Federal Practice* ¶ 0.411[6] (2d ed. 1984) (interested non-party may offer himself as *amicus curiae*). *But see United States v. Saks & Co.*, 1975 Trade Cas. (CCH) ¶ 60,219 (S.D.N.Y.1975) (Werker, J.) [available on WESTLAW, 1975 WL 868] (application of civil plaintiffs to appear as *amicus* denied since participation by interested parties would be tantamount to intervention which is proscribed in government antitrust proceedings).

### II. *Peckham Material's Motion to Plead Nolo Contendere*

█ The acceptance of *nolo contendere* pleas is governed by Rule 11(b), Fed.R. Crim.P., which provides:

A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the interest of the public in the effective administration of justice.

"A plea of nolo contendere is, for the purposes of punishment the same as the plea of guilty.... Unlike a plea of guilty, however, it cannot be used against a defendant as an admission in a subsequent criminal or civil case." Fed.R.Crim.P. 11(b) advisory committee's note. "A defendant does not have an absolute right to plead nolo contendere. Under Rule 11(b), the consent of the court to the plea must be obtained, and such consent is given sparingly." 8 J. Moore, *Moore's Federal Practice* ¶ 11.03[2] (2d ed. 1988). When faced with a request to plead *nolo contendere* the trial judge must balance the interests of the defendant, in contesting its liability in subsequent civil actions, against society's interest in a definite resolution of the defendant's guilt. *See* Fed.R.Crim.P. 11(b) advisory committee's note.

The standard governing requests to plead *nolo* is no different in antitrust cases. "[T]he intent of Congress has been to retain the plea of *nolo contendere* in antitrust cases ..." *United States v. B.F. Goodrich Co.*, 1957 Trade Cas. (CCH) ¶ 68,713 at 72,878 (D.Colo.1957).

In assessing whether a plea of *nolo contendere* would be in the interests of justice, courts consider all relevant factors, including any mitigating circumstances, the deterrent effect of a *nolo* plea and the pragmatic consideration of avoiding an expensive and time-consuming trial. 8 J. Moore, *Moore's Federal Practice* ¶ 11.03[2] (2d ed. 1987). Each case is determined on its own facts. *United States v. Standard Ultramarine & Color Co.*, 137 F.Supp. 167, 172 (S.D.N.Y.1955).

In *Standard Ultramarine*, Judge Weinfeld outlined the following criteria to be used in determining whether a *nolo* plea is in "the public interest": (1) the nature and duration of the offense; (2) the size and power of the defendants in the particular industry; (3) the impact of the condemned conduct on the economy; (4) the effect that a plea change could have on deterrence; and (5) the views of the government. 137 F.Supp. at 172. In addition, some courts have considered (6) the interests of civil litigants, *see United States v. H & M, Inc.*,

565 F.Supp. 1 (M.D.Pa.1982), and (7) the potential conservation of judicial resources, *see United States v. Charmer Industries, Inc.*, 1980–81 Trade Cas. (CCH) ¶ 64,145, at 76, 863 (E.D.N.Y.1981) [available on WESTLAW, 1981 WL 2098]. After weighing these factors, this Court concludes that permitting Peckham Materials to change its plea would not be in the public interest.

### A) *The Offense*

This Court has long-recognized that "white collar" antitrust violations cannot be indiscriminately characterized as "minor." *See Standard Ultramarine*, 137 F.Supp. at 170. Defendant Peckham Materials is charged with agreeing to rig bids and allocate government contracts. Such conduct constitutes a *per se* violation of Section 1 of the Sherman Act. *United States v. Koppers Co.*, 652 F.2d 290, 294 (2d Cir.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981). It comes within the class of agreements "which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958).

In my decision granting Westchester Colprovia leave to plead *nolo*, I noted that, "[w]hile it is clear that the charges lodged against the company are serious, it is clear that the company played at most a very small role in the alleged conspiracy." 689 F.Supp. at 341. The same cannot be said here. The Government apparently intends to prove that Peckham Materials regularly communicated with at least three of the other six corporate defendants. It alleges that these communications suppressed competition in southeastern Westchester between Peckham Materials' Portchester plant and the Mount Vernon plants of defendants Yonkers Contracting Co., Inc. and Nigro Bros., Inc., and may have also limited competition in central Westchester, given the excellent highway transportation between the Portchester plant and defendant County Asphalt, Inc.'s plant in Tarrytown.

The charges against Peckham Materials concern violations that allegedly occurred over a considerable period of time. Indeed, the Government charges that the violations only ceased after the grand jury investigation began. Peckham Materials disagrees. In support of its assertion that the alleged illegal conduct was "concluded prior to the initiation of the government's investigation," Peckham Materials' Memorandum of Law at 8, Peckham Materials refers to the Government's admission that the conspiracy was abandoned before the indictment was returned. Government's Memorandum of Law in Opposition to Westchester Colprovia's Request to Change its Plea at 10 n. 1. While this may be true, the Government alleges that Peckham Materials participated in illegal communications even after personnel at Peckham Materials knew the company was the subject of an antitrust investigation before a Connecticut grand jury, and even after subpoenas issued by a New York grand jury were served on companies in the industry, i.e. well after the initiation of the investigation. Government's Memorandum of Law at 2.

### B) *Size of the Defendant*

Another factor that contributed to my decision in *Westchester Colprovia* was that the company was relatively small. I noted that Westchester Colprovia's annual revenues had hovered around five to six million dollars during the years covered by the indictment. 689 F.Supp. at 341. Defendant Peckham Materials is a much larger company. According to the Government, Peckham Materials' annual revenues were "in the vicinity of $40 million." Transcript of Conference Sept. 6, 1988 at 4.

### C) *The Economy*

Peckham Materials argues that the indictment in this case does not allege any economic injury, and that its *nolo* plea should therefore be accepted. Peckham Materials' Memorandum of Law at 16. It can be presumed, however, that if the charges are true, the alleged violations had

a significant economic impact. The charges here involve violations that the law presumes result in economic injuries. *See Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Moreover, unlike the situation in *Westchester Colprovia*, where the company's small revenues led me to conclude that the impact on the economy was "minimal," 689 F.Supp. at 341, we deal here with a relatively large corporation.

### D) *Deterrence*

Defendant claims that a *nolo* plea would not hinder the deterrent effect of this prosecution because powerful criminal sanctions recently adopted by Congress have lessened the need for civil damage actions. Defendant notes that since the time when Judge Weinfeld decried the acceptance of *nolo* pleas in criminal antitrust cases as "a slap on the wrist," Congress has increased the maximum penalty in such cases to one million dollars. *See* 15 U.S.C. § 1 (Supp. 1988) (1974 amendment); *United States v. Roblin Industries*, 1980–81 Trade Cas. (CCH) ¶ 63,644 at 77,485 & n. 3 (Sand, J.) [available on WESTLAW, 1980 WL 1954] (since Judge Weinfeld in *Standard Ultramarine* indicated that, to a corporation pleading *nolo*, a fine would be a mere slap on the wrist, the maximum fine has been increased). Defendant suggests that one purpose of the 1974 amendment was to shift the emphasis of antitrust enforcement from a reliance on civil claims to a use of tougher criminal penalties. Yet nothing in the legislative history of the 1974 amendment evinces an intent to alter the balance described by Judge Weinfeld between criminal and civil penalties. *See, e.g.,* H.Rep. No. 1463, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. News 6535, 6540 (upward revisions of fines were "long overdue" and could be too low "since profits from antitrust violations can run into billions of dollars"). Judge Sand did not reach a contrary conclusion in *Roblin*; his opinion relied heavily on *Standard Ultramarine*. I agree with the Government that permitting Peckham Materials to plead *nolo* would not send others the message that the antitrust laws are being vigorously enforced.[1]

The two "mitigating factors" cited by defendant also relate to deterrence. In essence, Peckham Materials claims that a *nolo* plea will not hinder the deterrent effect of the prosecution since it has already learned its lesson. Specifically, it claims that the company is now under new management, and those officers have already proven their good faith by implementing antitrust compliance policies.

I am not persuaded that the company has been completely purged of tainted officers. Defendant's current president, James V. DeForest, as well as one of its vice presidents, Joseph V. Kuch, were both named as unindicted co-conspirators in the Government's Supplemental Bill of Particulars. Moreover, while Jack Peckham, who ran the corporation during much of the period covered in the indictment, is no longer alive, defendant is still controlled by his survivors. Members of the Peckham family hold 72% of the parent corporation's shares, as well as positions on the board and management of Peckham Materials.

While the adoption of an antitrust policy is encouraging, another factor that this Court must consider is the Department of Justice's position. In the Government's view, it would serve as a poor example to others if defendant were permitted to plead *nolo* on the basis of such efforts. The Government alleges that "there was conspiratorial activity in Westchester even after companies in New York received subpoenas directed to an investigation in New York state." Transcript of Conference Sept. 6, 1988 at 6. These years of "callous indifference" cannot be completely erased by either the steps taken towards rehabilitation or the minor penalties already imposed on defendant.

### E) *Private Litigants*

There is no doubt that the effect that a *nolo* plea would have on Civil Plaintiffs'

---

1. At least one court has noted that, despite the defendant's exposure to criminal penalties, a *nolo* plea may be perceived by the public as a "slap on the wrist." *United States v. H & M, Inc.*, 565 F.Supp. 1, 3 (M.D.Pa.1982).

case would be less deleterious than the effect that such pleas typically have in antitrust cases. A conviction under this indictment would only be evidence that defendant rigged some bids somewhere in Westchester County. Civil Plaintiffs would not be relieved of their burden of proving which bids were rigged and by how much. Defendant's Reply Brief at 3–7.

Nevertheless, Civil Plaintiffs' case may be deprived of valuable evidence if Peckham Materials is permitted to plead *nolo*. Civil litigants in antitrust cases are not only aided by guilty verdicts. When a defendant is tried in a criminal case, the civil plaintiffs benefit from the public disclosure of evidence that would otherwise be confidential grand jury material. *See Roblin Industries*, 1980–81 Trade Cas. (CCH) ¶ 63,644 (while court found that civil plaintiffs were not dependent on government's evidence, it noted that "evidence developed at trial of this case or the entry of guilty pleas available as admissions would be of considerable aid to the plaintiffs in civil litigation"). Acceptance of a *nolo* plea could "prevent the disclosure of evidence that the Government has painstakingly gathered.... [I]t would be difficult for the treble damage plaintiff to duplicate the results of the investigation which was conducted by means of a lengthy grand jury proceeding." Civil Plaintiff's Amicus Brief at 13; *see also* Fed.R.Crim.P. 6(e)(3)(C)(i) (court may order disclosure of grand jury material for a subsequent judicial proceeding); *Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S:Ct. 1667, 1675, 60 L.Ed.2d 156 (1979) (in order to obtain grand jury material from criminal antitrust case in which defendant pleaded *nolo contendere*, civil plaintiffs would have to show that a particularized need for disclosure outweighed the interest in grand jury secrecy).

### F) *Judicial Resources*

The elimination of Peckham Materials as a defendant at trial would not significantly conserve judicial resources. The company's former employees would still need to testify at trial concerning the other defendants' alleged participation in the conspir-

acy. The elimination of one opening and closing argument and one set of cross-examinations would not significantly affect the length or complexity of the trial of the other twelve defendants. Where all the defendants in a complex criminal case request permission to plead *nolo*, the overwhelming judicial economy of avoiding a trial will often dictate that the requests be granted. *See Charmer Industries*, 1980–81 Trade Cas. (CCH) ¶ 64,145, at 76, 863. The judicial economy resulting from the absence of this one defendant would be, by comparison, insignificant.

### Conclusion

For the reasons stated above, defendant Peckham Materials' request to change its plea from not guilty to *nolo contendere* is denied.

SO ORDERED.