LIBERTY LINCOLN MERCURY, INC., Plaintiff,

v.

FORD MARKETING CORP. and Ford Motor Co., Defendants.

WARNOCK AUTOMOTIVE, INC., Plaintiff,

v.

FORD MARKETING CORP. and Ford Motor Co., Defendants.

Civ. A. Nos. 92–4178 (AJL), 93–687 (AJL).

United States District Court, D. New Jersey.

May 14, 1993.

Norman I. Klein and Allan R. Jacobs, Carlet, Garrison & Klein, Clifton, NJ, for plaintiffs Liberty Lincoln–Mercury, Inc. and Warnock Automotive, Inc.

Dennis R. LaFiura, Pitney, Hardin, Kipp & Szuch, Morristown, NJ and Jay Kelly Wright and Hilde E. Kahn, Arnold & Porter, Washington, DC, for defendants Ford Marketing Corp. and Ford Motor Co.

Marvin J. Brauth, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for New Jersey Auto. Dealers Assoc., Proposed amicus curiae.

Barry S. Goodman and Christine F. Marks, Greenbaum, Rowe, Smith, Ravin & Davis, Woodbridge, NJ, for Ford Dealers Alliance, Proposed amicus curiae.

## OPINION

LECHNER, District Judge.

Currently before the court are a number of related motions in the two above-captioned actions. First, in the action entitled *Liberty*

Lincoln–Mercury, Inc. v. Ford Marketing Corp. and Ford Motor Co., Civ. No. 92–4178 (AJL) (D.N.J.) (the "Liberty Action"), plaintiff Liberty Lincoln–Mercury, Inc. ("Liberty Lincoln") moves for leave to amend the complaint (the "Liberty Complaint"), filed 5 October 1992, and for class certification pursuant to Fed.R.Civ.P. 23.[1] Second, in a separate action entitled Warnock Automotive, Inc. v. Ford Marketing Corp. and Ford Motor Co., Civ. No. 93–687 (AJL) (D.N.J.) (the "Warnock Action"), plaintiff Warnock Automotive, Inc. ("Warnock") moves to consolidate, pursuant to Fed.R.Civ.P. 42, the Warnock Action with the Liberty Action.[2] Finally, the New Jersey Automobile Dealers Association ("NJADA") and the Ford Dealers Alliance ("FDA") move for leave to appear as amicus curiae[3] with relation to these cases.[4]

For the reasons that follow, the motion by Liberty Lincoln for class certification is denied. The motion by Liberty Lincoln for leave to amend the Liberty Complaint is granted in part and denied in part. The motion by Warnock for consolidation of the Warnock Action with the Liberty Action is denied. The motions by the NJADA and FDA for leave to intervene as amicus curiae are denied.

*Facts*

A. *The Parties*

Ford is a corporation organized under the laws of Delaware with its principal place of

---

1. In support of its motion for class certification and for leave to amend the Liberty Complaint, Liberty Lincoln has submitted the following: Plaintiffs' Memorandum in Support of Motion For Leave to Amend and For Class Certification (the "Liberty Moving Brief"); Affidavit of Robert X. Robertazzi (the "Robertazzi Aff."); Plaintiffs' Reply Memorandum in Further Support of Motion For Leave to Amend and For Class Certification (the "Liberty Reply. Brief"); Affidavit of Edwin J. Mullane (the "Mullane Aff."); Affidavit of John Darling; Plaintiffs' Memorandum in Reply to Ford Motor Company's Supplemental Memorandum in Opposition to Class Certification (the "Liberty Supp. Reply Brief"); Supplemental Affidavit of Robert X. Robertazzi (the "Robertazzi Supp. Aff.").

In opposition to these motions by Liberty Lincoln, defendants Ford Marketing Corp. ("Ford Marketing") and Ford Motor Co. ("Ford") have submitted the following: Memorandum of Ford Motor Company in Opposition to Liberty's Motion For Class Certification and Motion to Amend (the "Ford Opp. Brief"); Declaration of Ramon C. Pearson (the "Pearson Decl."); Declaration of James W. Suhay (the "Suhay Decl."); Supplemental Memorandum of Ford Motor Co. in Opposition to Class Certification (the "Ford Supp. Opp. Brief").

Oral argument was held on the motion for class certification and for leave to amend on 26 April 1993. See Transcript of Proceedings, dated 26 April 1993 (the "26 April 1993 Tr."), at 3–18.

2. In support of its motion for consolidation, Warnock has submitted the following: Brief in Support of Motion For Consolidation of Actions (the "Warnock Moving Brief"); Affidavit of Robert X. Robertazzi; Affidavit of Donald W. Warnock (the "Warnock Aff."); Letter Memorandum in Reply to Memorandum of Ford Motor Company in Opposition to Warnock Automotive, Inc.'s Motion for Consolidation;

In opposition to the motion for consolidation, Ford has submitted the following: Memorandum

of Ford Motor Company in Opposition to Warnock's Motion For an Order of Consolidation.

Oral argument was held on the consolidation motion on 26 April 1993. See 26 April Tr.1993 at 3–18.

3. In support of the motions for leave to appear amicus curiae, NJADA and FDA have submitted the following: Memorandum of Law in Support of Motion By the New Jersey Automobile Dealers Association for Leave to Appear as Amicus Curiae (the "NJADA Moving Brief"); Memorandum of Law in Support of Ford Dealers Alliance's Motion For Leave to Appear as Amicus Curiae and Memorandum of Law of Ford Dealers Alliance as Amicus Curiae (the "FDA Moving Brief"); Reply Memorandum on Behalf of the New Jersey Automobile Dealers Association in Support of Its Motion to Appear as Amicus Curiae; Reply memorandum of Ford Dealers Alliance in Further Support of Its Motion For Leave to Appear as Amicus Curiae (the "FDA Reply Brief"); Letter Brief of Liberty Lincoln in Support of Application For NJADA to Appear as amicus curiae.

In opposition to the motion for leave to appear amicus curiae, Defendants have submitted the following: Memorandum of Ford Motor Company in Opposition to Motions of New Jersey Automobile Dealers Association and Ford Dealers Alliance to Appear as amicus curiae.

Oral argument was denied on the motions for leave to appear as amicus curiae. 26 April 1993 Tr. at 2.

4. NJADA is a 760 member group representing the interests of New Jersey automobile dealers. NJADA Moving Brief at 1. FDA is a nationwide organization of 1,700 automobile dealers, consisting of approximately 1,500 Ford dealers, 80 Lincoln–Mercury dealers, 150 Chevrolet dealers and 5 other dealers. FDA Moving Brief at 6–7.

business in Dearborn, Michigan.[5] Robertazzi Aff., ¶ 9. Ford manufactures, assembles, distributes and sells motor vehicles to authorized dealers (the "Dealers") for resale to their customers. Suhay Decl., ¶ 1. Ford's sales operations have three divisions: a Ford Division, a Lincoln–Mercury Division and a Ford Parts & Services Division. *Id.;* Robertazzi Aff., ¶ 10. The Ford Parts & Services Division is the division of Ford responsible for the sale and distribution of Ford parts and the maintenance of its warranty policy service. Robertazzi Aff., ¶ 10.

Ford has established 123 Dealers and franchisees in New Jersey which sell Lincoln, Mercury and/or Ford vehicles. *Id.,* ¶ 12; Pearson Aff., ¶ 2. Of these 123 Dealers, there are 38 Lincoln–Mercury dealers, 4 Ford–Mercury Dealers, 7 Ford–Lincoln–Mercury dealers and 74 Ford dealers. Pearson Aff., ¶ 2. Since 1976, Liberty Lincoln has been one of the 38 authorized Lincoln–Mercury dealers in New Jersey. *Id.* Liberty Lincoln sells and services new passenger cars, and sells parts and accessories manufactured by the Lincoln–Mercury Division. *Id.;* Robertazzi Aff., ¶ 5. Since 1984, Warnock and its predecessors have been an authorized dealer of Ford automobiles in New Jersey. Warnock Aff., ¶¶ 5–8. Warnock sells and services new passenger cars, and sells parts and accessories manufactured by the Ford Division. *Id.*

Liberty Lincoln's relationship with Ford is premised upon two separate agreements—a Lincoln Sales and Service Agreement and a Mercury Sales and Service Agreement—while Warnock's relationship with Ford is premised upon a Ford Sales and Service Agreement (collectively, the "Dealer Agreements"). Liberty Moving Brief at 2; Warnock Aff., ¶ 5. These Dealer Agreements are substantially identical, except for appropriate conforming changes involving the names Lincoln, Mercury and Ford. Robertazzi Aff., ¶ 4

& Exs. A & B (copies of Dealer Agreements); Suhay Decl., ¶ 3; Warnock Aff., ¶ 12 & Ex. B (same). Ford has entered into Dealer Agreements with all Dealers authorized to sell and service Lincoln, Mercury or Ford automobiles. Ford Opp. Brief at 5; *see also* Robertazzi Aff., ¶ 16.

### B. *Ford's Warranty Program*

Ford maintains a warranty program (the "Ford Warranty Program") on new motor vehicles sold to its Dealers. Ford Opp. Brief at 5. Under the Ford Warranty Program, "certain repairs, replacements, or adjustments are made free of charge to the consumer." *Id.;* Suhay Decl., ¶ 2. These warranties vary from year to year and between product lines. Suhay Decl., ¶ 2.

The Ford Warranty Program is embodied both in the Dealer Agreements, including Liberty Lincoln's and Warnock's Dealer Agreements, and in the Warranty and Policy Manuals (the "Ford Warranty Manuals") which Ford distributes to its Dealers and updates annually. *Id.,* ¶ 3. The Ford Warranty Manuals are incorporated by reference into the Dealer Agreements. *Id.*

The Ford Warranty Program imposes a number of requirements upon its Dealers. For instance, Dealers are obligated to perform warranty work on all Ford products which the Dealers are authorized to sell or service, free-of-charge to new motor vehicle owners,[6] regardless of whether the Dealers actually sold the original defective products.[7] Robertazzi Aff., ¶¶ 14–15. Paragraph 4(b)(1) of the Dealer Agreements provides:

> The dealer shall perform all warranty and policy service on each company product it is certified to sell and service, presented by owners, in accordance with the warranty and policy applicable thereto and the applicable warranty manual and customer service bulletin.[8]

---

5. Ford Marketing was merged into Ford on 31 December 1974. Robertazzi Aff., ¶ 9.

6. With the exception of warranty work, Dealers are free to sell Ford, Lincoln and Mercury products to consumers at any price they choose. Suhay Decl., ¶ 4.

7. It appears that Liberty Lincoln performed over 6,000 warranty repairs in 1992. 26 April 1992 Tr. at 15.

8. The prior version of Paragraph 4(b)(1) required Dealers to provide warranty service on those vehicles which it actually sold, as well as those vehicles presented by "visiting" owners, defined as "those [owners] whose selling [D]ealer has

*Id.,* ¶ 15; Warnock Aff., ¶ 13. The Dealer Agreements further require the Dealers to give precedence to warranty work over other independent service work undertaken by the Dealers. Robertazzi Aff., ¶ 3 (Dealer Agreement, ¶ 4(b)(3)).

The Dealer Agreements also obligate Ford to reimburse its Dealers for any warranty work performed. Suhay Decl. ¶ 5; Robertazzi Aff., ¶ 3. Paragraph 4(b)(4) of the Dealer Agreements provides:

> The Dealer shall submit claims to [Ford] for reimbursement for the parts and labor used in performing warranty ... work and [Ford] shall reimburse the Dealer therefore, in accordance with the provisions of the Warranty Manual or campaign instructions and the Dealer's approved warranty labor rate. The Dealer shall maintain adequate records and documents supporting such claims....

Robertazzi Aff., ¶ 3 (Dealer Agreement. ¶ 4(b)(4)); Warnock Aff., ¶ 12.

Ford employs a uniform national reimbursement formula (the "Reimbursement Formula") applicable to all Ford, Lincoln and Mercury Dealers in the United States. Suhay Decl., ¶ 5; Ford Opp. Brief at 6. The Reimbursement Formula employed by Ford is as follows:

> When warranty work requires replacement of a part, a Dealer is reimbursed for the cost of the part, plus a markup equal to 40 percent of cost on 1994 model vehicles, 35 percent of cost on 1993 model vehicles and 30 percent on prior years' models.

Suhay Decl., ¶ 6; Ford Opp. Brief at 6–7. The current Reimbursement Formula became effective on 15 June 1992. Robertazzi Aff., Ex. C. (Letter from Ford, dated 18 May 1992, at 1) (announcing revised Reimbursement Formula).

According to Ford, the "overwhelming majority of Dealers" have not objected to the Reimbursement Formula.[9] Ford Opp. Brief at 7; 26 April 1993 Tr. at 3, 14. Ford cites

numerous reasons for this alleged contentment. For instance, Ford indicates that, when discounts and incentives are taken into account, the effective markup is higher than the percentage stated in the Reimbursement Formula. Suhay Decl., ¶ 6. Moreover, the markup percentage of the Reimbursement Formula has allegedly been "increased over the years in response to competitive conditions and suggestions from dealers." *Id.* Finally, according to Ford, the use of a uniform Reimbursement Formula "promotes ease of administration, equal treatment of Dealers and certainty of warranty reimbursement." *Id.,* ¶¶ 5–6.

### C. Cost of Ford Parts

The Ford Parts and Services Division publishes and distributes a parts and accessories price list (the "Parts Price List") for Ford, Lincoln and Mercury parts. Robertazzi Aff., ¶ 19. The Parts Price List is distributed to every Ford, Lincoln and Mercury Dealer. *Id.* The Parts Price List sets forth, *inter alia,* a suggested retail price, a discount percentage, and a dealer price. *Id.* The Dealers purchase parts from Ford at a discounted price (the "Dealer Price") rather than at the suggested retail price. *Id.*

As mentioned, when performing non-warranty work, the Dealers can impose whatever retail charge for parts they choose, despite the inclusion of suggested retail prices in the Parts Price List. Suhay Decl., ¶ 7. Accordingly, the retail price of a replacement part varies among the Dealers, depending upon such factors as the type of part, geographic location of the Dealer, availability of alternative parts suppliers, time of year, identity of customer, promotional discounts and other competitive market forces. *Id.* In addition, as Ford points out, the effective price received by a Dealer for sale of a part to a non-warranty customer "may be different from the stated retail price, because of debt collection problems, dealership fees for credit card purchases, marketing incentive programs, advertising costs and similar factors." *Id.*

---

ceased to do business, or who are travelling, or have moved a long distance from their selling [D]ealers or need emergency repairs." Robertazzi Aff., ¶ 14.

**9.** Liberty contests this claim by vaguely stating that "Ford's parts reimbursement practices have been continuously disputed over the course of the last 17 years." Liberty Reply Brief at 7. No such statement was made at oral argument.

None of these market considerations affect the reimbursement price for parts used by the Dealers in warranty work. *Id.* As mentioned, when performing warranty service, replacement parts are provided free-of-charge to customers and the Dealers are then compensated by Ford for those parts. Ford's compensation for parts used by the Dealers in warranty repairs is based on the Reimbursement Formula. Robertazzi Aff., ¶ 20. In other words, reimbursement of the Dealers is based upon the discounted Dealer Price, increased by the percentage applicable to the year model of the vehicle repaired. *Id.*

As Liberty Lincoln and Warnock explain, the Reimbursement Formula may create a difference between the price for which a Dealer can sell a part in a warranty situation and the price in a non-warranty situation. *See* Robertazzi Aff., ¶ 18; Warnock Aff., ¶ 16. This difference in price may require a Dealer to sell parts in a warranty situation for an amount below the Dealer's chosen retail price. *See* Robertazzi Aff., ¶ 18; Warnock Aff., ¶ 16. Liberty Lincoln poses the following example:

> If a [D]ealer ... purchases a part from Ford for $100.00, he may choose to establish the retail price of that part at $177.00. If he uses that part in a non-warranty repair, he will then charge the customer $177.00. If he uses it in a warranty repair, however, Ford will pay him only $130.00 or a 30 [percent] mark-up.

Liberty Moving Brief at 6; Robertazzi Aff., ¶ 21.

### D. *Special Reimbursement Request By Liberty Lincoln*

On 12 December 1991, Liberty Lincoln requested a warranty parts reimbursement arrangement different from that available under the Reimbursement Formula. Suhay Decl., ¶ 8. Specifically, Liberty Lincoln requested reimbursement at a rate equal to its chosen retail price for parts sold in non-warranty settings.[10] *Id.* It appears that Liberty Lincoln was and is the only Lincoln–Mercury Dealer in New Jersey to request such a departure from the Reimbursement Formula.[11] *Id.*

In response to Liberty Lincoln's request, Ford asked Liberty Lincoln to furnish documentation of the price and cost of parts on a month-long sample of retail repairs. Suhay Decl., ¶ 9. From this list, Ford determined that, *inter alia*, the percentage markup employed by Liberty Lincoln varied from part to part. *Id.* Ford also determined that the sample of retail repairs submitted by Liberty Lincoln "showed an average parts markup of 77 percent." *Id.,* ¶ 10. Ford concedes that, retroactively effective from 12 December 1991, it agreed to apply a 77 percent markup in paying Liberty Lincoln's warranty reimbursement claims. *Id.;* Robertazzi Aff., ¶ 23 & Ex. D (Letter from Ford to Liberty Lincoln, dated 5 November 1992, at 1 (agreeing to markup of 77 percent)). Ford does not concede, however, that the percentage paid to Liberty Lincoln is reasonable.[12] Suhay Decl., ¶ 10; Robertazzi Aff., ¶ 23 & Ex. D.

---

**10.** Liberty Lincoln takes the position that reimbursement for any amount less than its retail price violates the New Jersey Franchise Practice Act, N.J.S.A., §§ 56:10–1 *et seq.* (the "Franchise Practice Act"). Section 56:10–15 of the Franchise Practice Act provides in pertinent part:
> If any motor vehicle franchise shall require or permit motor vehicle franchisees to perform services or provide parts in satisfaction of a warranty issued by the motor vehicle franchisor:
> (a) The motor vehicle franchisor shall reimburse each motor vehicle franchisee ... for such parts as are supplied, in an amount equal to the *prevailing retail price* charged by such motor vehicle franchisee for such services and parts in circumstances where such services are rendered or such parts provided other than pursuant to a warranty; *provided that* such

motor vehicle franchisee's prevailing retail price is *not unreasonable when compared* with that of the holders of motor vehicle franchises from the same motor vehicle franchisor for identical merchandise or service *in the geographic area in which the motor vehicle franchisee is engaged in business.*
> N.J.S.A. § 56:10–15 (emphasis added).

**11.** Even Warnock continues to be reimbursed according to the Reimbursement Formula, although it contends it has not requested an increase in the reimbursement rate equal to its retail price because "[s]uch an application would be an exercise in futility." Warnock Aff., ¶¶ 19–20.

**12.** According to Ford:
> Ford did not agree that Liberty [Lincoln]'s average markup of 77 percent was "reason-

To directly compensate for these increased warranty reimbursement costs, Ford began charging Liberty Lincoln a surcharge—known as the "Dealer Parity Surcharge"—on new cars delivered to Liberty Lincoln. Suhay Decl., ¶ 11; Robertazzi Aff., ¶ 23 & Ex. D. While the details of this Dealer Parity Surcharge are somewhat complicated, *see* Robertazzi Aff., Ex. D, it is contended the net result is that the surcharge is equal to the increase in reimbursement costs paid by Ford to Lincoln Mercury.[13] Robertazzi Aff., ¶¶ 23–24; Suhay Decl., ¶ 11.

Not unexpectedly, Liberty Lincoln challenges the Dealer Parity Surcharge as "an improper deduction" from their reimbursement agreement with Ford, in violation of the Franchise Practices Act, N.J.S.A. § 56:10–15. Liberty Moving Brief at 7. Ford argues the passing on of warranty costs to Dealers is lawful. Ford Opp. Brief at 10 n. 3 (citations omitted).

In this action, Liberty Lincoln and Warnock seek a declaration that Ford's actions are prohibited by the Franchise Practices Act, N.J.S.A. § 56:10–15, as well as the recovery of compensatory and other damages. Liberty Moving Brief at 1; Warnock Aff., Ex. A (copy of *Warnock* Complaint).

*Discussion*

**A.** *Motion For Class Certification*

In the *Liberty* Complaint, Liberty Lincoln claimed to represent a class of 38 Lincoln–Mercury Dealers located in New Jersey. Now, Liberty Lincoln seeks statewide class certification not just with regard to Lincoln–Mercury Dealers, but also with regard to all Lincoln, Mercury and Ford Dealers in New

Jersey. *Liberty* Moving Brief at 1. Accordingly, the larger proposed class would include 123 members, while the smaller proposed class of only Lincoln–Mercury Dealers would include 38 members. In either case, class certification is not appropriate.[14]

1. *Standard of Review*

A party bringing a motion for class certification pursuant to Fed.R.Civ.P. 23 ("Rule 23") carries the burden of establishing all requirements of Rule 23. *Lerch v. Citizens First Bancorp, Inc.,* 144 F.R.D. 247, 250 (D.N.J.1992); *Maguire v. Sandy Mac, Inc.,* 138 F.R.D. 444, 446 (D.N.J.1991), *vacated on other grounds,* 145 F.R.D. 50 (D.N.J.1992); *Zlotnick v. Tie Communication, Inc.,* 123 F.R.D. 189, 190 (E.D.Pa.1988); *Glictronix Corp. v. American Tel. & Tel. Co.,* 603 F.Supp. 552, 584 (D.N.J.1984); *Seiler v. E.F. Hutton & Co.,* 102 F.R.D. 880, 887 (D.N.J. 1984).

First, a party moving for class certification must show that the four requirements of Rule 23(a) are met. *PBA Local No. 38 v. Woodbridge Police Dep't,* 134 F.R.D. 96, 101 (D.N.J.1991). Rule 23(a) provides:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all *only* if (1) the class is so *numerous* that joinder of all members is impracticable, (2) there are questions of law or fact *common* to the class, (3) the claims or defenses of the representative parties are *typical* of the claims or defenses of the class, and (4) the representative parties will fairly and *adequately* protect the interests of the class.

Fed.R.Civ.P. 23(a) (emphasis added).

---

able." The use of the 77 percent average markup for purposes of warranty parts reimbursement was a matter of administrative convenience to avoid the expense of identifying a retail part sale to correspond with every incident of replacing a part under warranty and to avoid the burden of further controversy over "reasonableness."
Suhay Decl., ¶ 10; Ford Opp. Brief at 9–10.

**13.** At oral argument, Liberty Lincoln explained that the Dealer Parity Surcharge is levied against subsequent shipments of vehicles by Ford to Liberty Lincoln, rather than against the actual vehicles which required warranty repairs. 26 April 1993 Tr. at 9.

**14.** The *Warnock* Complaint indicates that Warnock has brought the *Warnock* Action on behalf of "all present Lincoln, Mercury and Ford dealers/franchisees of [Ford] in the State of New Jersey." *Warnock* Complaint, ¶ 14. While Warnock has filed a motion to consolidate the *Warnock* Action with the *Liberty Action,* it has not sought class certification of its proposed class. Nevertheless, because Liberty Lincoln has proposed the same class as Warnock, the comments in this Letter–Opinion would apply should Warnock seek class certification.

A class action cannot be certified unless "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Seiler,* 102 F.R.D. at 887 (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)); *accord Maguire v. Sandy Mac, Inc.,* 145 F.R.D. 50, 51 (D.N.J. 1992); *Lerch,* 144 F.R.D. at 250; *Churchill v. International Business Machines, Inc.,* 759 F.Supp. 1089, 1101 (D.N.J.1991); *Curley v. Cumberland Farms Dairy, Inc.,* 728 F.Supp. 1123, 1128 (D.N.J.1989).

Second, the moving party must also demonstrate that the action falls within one of the three categories of Rule 23(b).[15] *PBA Local No. 38,* 134 F.R.D. at 101. In this case, Liberty Lincoln moves for class certification pursuant to Fed.R.Civ.P. 23(b)(2) and/or 23(b)(3). These sections provide:

**(b) Class Actions Maintainable.** An action may be maintainable as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final *injunctive* relief or corresponding *declaratory* relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy....

Fed.R.Civ.P. 23(b)(2)–(3) (emphasis added).

■ A court should not decide the merits of a case on a motion for class certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40

L.Ed.2d 732 (1974); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 252 (3d Cir.1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Maguire,* 145 F.R.D. at 52; *McClendon v. Continental Group, Inc.,* 113 F.R.D. 39, 44 (D.N.J.1986); *Seiler,* 102 F.R.D. at 889 n. 4. Nevertheless, a court may analyze the essential elements of the substantive claims in order to evaluate whether the requirements of Rule 23 have been met. *McClendon,* 113 F.R.D. at 44; *Glictronix,* 603 F.Supp. at 584. A court may review the pleadings and the facts procured through discovery in making its determination. *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 368 (E.D.Pa.1980); *see also Maguire,* 138 F.R.D. at 447 ("court must look beyond the bald allegations in the complaint to determine whether plaintiff has satisfied the requirements of Rule 23").

### 2. *Rule 23(a) Requirements*

#### a. *Numerosity*

■ In order to satisfy Rule 23(a)(1), the moving party must demonstrate that the class is so large as to make joinder impracticable. *See* Fed.R.Civ.P. 23(a)(1). The number of potential class members is not, in itself, determinative of this analysis, *see Daigle v. Shell Oil Co.,* 133 F.R.D. 600, 603 (D.Colo.1990), *aff'd in part and rev'd in part,* 972 F.2d 1527 (10th Cir.1992); *Harrison v. Simon,* 91 F.R.D. 423, 431 (E.D.Pa.1981), and the moving party need not show the exact size of the proposed class to meet this requirement. *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J.1990); *Vargas v. Calabrese,* 634 F.Supp. 910, 918 (D.N.J.1986); *In re Data Access Systems Secur. Litig.,* 103 F.R.D. 130, 137 (D.N.J. 1984), *rev'd on other grounds,* 843 F.2d 1537 (3d Cir.1988), *cert. denied sub nom., Vitiello v. I. Kahlowsky & Co.,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988); *Peil,* 86 F.R.D. at 365 n. 5. Moreover, as one court has recently stated: "Impracticability does

---

**15.** The requirements of Rule 23(a) and Rule 23(b) serve different purposes. The requirements of Rule 23(a) are mandated by constitutional due process considerations and exist so that absent class members may be bound by the resulting class action judgment in accordance with due process. *PBA Local No. 38,* 134 F.R.D.

at 101 (citing *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). In contrast, the requirements of Rule 23(b) "are designed to test whether ... from a practical standpoint, there are any particularly compelling circumstances which make representative litigation appropriate." *PBA Local No. 38,* 134 F.R.D. at 101.

not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for class certification." *Lerch,* 144 F.R.D. at 250; *see also Zinberg,* 138 F.R.D. at 405.

Liberty Lincoln has not established that joining all members of its proposed class is so inconvenient or difficult that class certification is required. Despite recognizing that the numerosity requirement of Fed. R.Civ.P. 23(a)(1) is more than a mere "numbers game," the sole argument presented by Liberty Lincoln is that courts "have certified classes with as few as twenty members." [16] *See* Liberty Moving Brief at 13–14 (citing four cases). As courts have repeatedly recognized, mere conclusory or speculative allegations that joinder is impractical are not sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See, e.g., Marcial v. Coronet, Ins. Co.,* 122 F.R.D. 529, 531 (N.D.Ill.1988), *aff'd,* 880 F.2d 954 (7th Cir. 1989); *Stoudt v. E.F. Hutton & Co.,* 121 F.R.D. 36, 38 (S.D.N.Y.1988); *Vargas v. Meese,* 119 F.R.D. 291, 293 (D.D.C.1987); *Women's Health Center, Inc. v. Webster,* 670 F.Supp. 845, 851–52 (E.D.Mo.1987); *Calloway v. Westinghouse Elec. Corp.,* 642 F.Supp. 663, 671 (M.D.Ga.1986); *see also Sanna v. Delta Airlines,* 132 F.R.D. 47, 50 (N.D.Ohio 1990).

Practicability of joinder depends on a number of factors, including: the size of the class, ease of identifying members and determining addresses, ease of service on members if joined, geographical dispersion and whether proposed members of the class would be able to pursue remedies on an individual basis. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986); *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981); *Daigle,*

133 F.R.D. at 603; *Block v. First Blood Assoc.,* 125 F.R.D. 39, 42 (S.D.N.Y.1989); *Vargas,* 119 F.R.D. at 293; *Calloway,* 642 F.Supp. at 671; *Lawson v. Wainwright,* 108 F.R.D. 450, 454 (S.D.Fla.1986).

All of these factors indicate that, contrary to Liberty Lincoln's conclusory suggestion, joinder in this case is neither impractical nor difficult. First, whether viewed as a potential class of 38 or 123 members, this number is not so large as to preclude joinder of all potential plaintiffs. This is particularly so because, at this time, *only* Liberty Lincoln and Warnock have challenged the legality of Ford's Reimbursement Formula and policies. Second, there are no practical impediments to joinder or to affording complete relief in this case absent a class action. *All* 123 Lincoln–Mercury and Ford dealerships are (1) known and readily identifiable by name and address, (2) easily subject to service of process and notice, and (3) confined to the limited geographical area of the State of New Jersey.

Finally, as the case law indicates, a class action is not appropriate when proposed class members are able to protect and defend their own interests. *See, e.g., Block,* 125 F.R.D. at 42–43; *Stoudt,* 121 F.R.D. at 38; *Vargas,* 119 F.R.D. at 293. In this case, the purported class members are all motor vehicle dealerships; each is a substantial business capable of litigating for itself. As the court in *Stoudt* reasoned: "[When] each proposed class member ... possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device." [17] 121 F.R.D. at 38.

b. *Commonality*

Rule 23(a)(2) requires that there be questions of fact or law common to all class

---

**16.** As Ford points out, this argument is meritless on its face because courts have also refused to certify classes larger than the proposed class in this case. *See* Ford Opp. Brief at 15 (citing *Carlisle v. LTV Electrosystems, Inc.,* 54 F.R.D. 237 (N.D.Tex.1972) (proposed class of 48 members rejected); *In re Anthracite Coal Antitrust Litig.,* 78 F.R.D. 709, 715 (M.D.Pa.1978) (proposed class of 141 members rejected)).

**17.** Again, this result is supported by the fact that only Liberty Lincoln and Warnock have challenged Ford's reimbursement policies and Reimbursement Formula, despite the fact that neither Ford's reimbursement policies nor the New Jersey Franchise Practices Act is new. *See Block,* 125 F.R.D. at 42 (class certification not required when 60 percent of eligible class members failed to respond to plaintiff's solicitations, thereby indicating lack of interest in the suit); *accord Daigle,* 133 F.R.D. at 603.

members as a condition for class certification. *See* Fed.R.Civ.P. 23(a)(2). This rule merely requires that there be some question of fact or law common to the members of the class. *Zinberg,* 138 F.R.D. at 406; *Vargas,* 634 F.Supp. at 918; *Malloy v. Eichler,* 628 F.Supp. 582, 590 (D.Del.1986). It is not necessary that all questions of fact or law raised be common.[18] *Weiss v. York Hospital,* 745 F.2d 786, 809 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *Lerch,* 144 F.R.D. at 251; *Maguire,* 138 F.R.D. at 448; *Zinberg,* 138 F.R.D. at 406; *Vargas,* 634 F.Supp. at 910. Rule 23(a)(2) is met, in the words of one commentator, when:

> [T]he party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, [and] one or more of the elements of that cause of action will be common to all of the persons affected.

H. Newberg, *Newberg On Class Actions,* § 3.10 (1985).

According to Liberty Lincoln, commonality exists because the claims of each of the proposed class members are identical, and all proposed class members are (1) Lincoln, Mercury or Ford Dealers, (2) subject to Ford's reimbursement policy and Reimbursement Formula and (3) subject to and protected by the Franchise Practices Act. Liberty Moving Brief at 14–15. Although Liberty Lincoln concedes that "the prevailing retail price" varies among potential class members, *see id.* at 15, it maintains commonality exists because none of the proposed class plaintiffs' claims are in conflict with each other and, if each plaintiff initiated its own action against defendants, the "questions of law and fact would be identical." *Id.* at 15–16.

Liberty Lincoln's claims are without merit. Simply because Liberty Lincoln and any other proposed class plaintiffs allege the same theory of recovery—based on the Franchise Practices Act, N.J.S.A. § 56:10–15—does not mean that legal or factual commonality exists among the proposed class members. Moreover, while all Dealers in the proposed class

are subject to Ford's Reimbursement Formula, whether that formula violates Section 56:10–15 will vary from Dealer to Dealer. In other words, as discussed below, the legal questions and factual determinations which predominate this case are highly individual.

Section 56:10–15 provides that reimbursement for a Dealer's warranty service must be at the Dealer's "prevailing retail price," provided that such price "is not unreasonable ... in the geographic area where the [Dealer] is engaged in business." N.J.S.A. § 56:10–15. By the statute's terms, then, Liberty Lincoln and any other potential plaintiff/Dealer must establish facts as to (1) the "prevailing retail price" charged for each of their parts from time-to-time, (2) the relevant geographic area and (3) the reasonableness of the chosen retail price charged for each part from time-to-time, in light of the previous two factual considerations.

Because the Dealers are free to establish their own retail price for each individual part, and because such retail prices vary from Dealer to Dealer in accordance with the part, the geographic location of Dealers, the availability of alternative parts suppliers, the time of year, the identity of customers, promotional discounts and other competitive market forces, it appears *each* factual determination required by Section 56:10–15 will vary from Dealer to Dealer. *Each dealer* has its own retail prices, its own relevant geographical test area and its own prevailing retail prices for that geographical area.

Accordingly, neither the reasonableness of an individual Dealer's retail price for a particular part nor the validity of Ford's Reimbursement Formula can be determined on a class basis. Determinations of reasonableness will vary for each part, at least, from locality to locality, and likely from dealer to dealer, as well as for the particular customer, time of year and promotional discounts. These determinations are so fact specific that, contrary to Liberty Lincoln's assertions, it is not at all evident that the proposed class of Ford, Lincoln and Mercury Dealers shares common claims. For instance, it is

---

**18.** The commonality requirement of Rule 23(a)(2) is less stringent than the requirement of Rule 23(b)(3), which requires that common ques-

tions "predominate." *PBA Local No. 38,* 134 F.R.D. at 102 n. 13; *Kromnick v. State Farm. Ins. Co.,* 112 F.R.D. 124, 127 (E.D.Pa.1986).

entirely possible that two Dealers, in different areas of New Jersey, could sell the same Ford part for the same retail price. Yet, given the different geographical areas of those Dealers and the different prevailing retail prices in those areas, it is possible that only one Dealer is selling that part for a "reasonable" retail price. In such a case, only one of the two Dealers may have an actionable claim.

While this specific scenario may or may not exist in fact, the point is that neither liability nor damages can be determined on a classwide basis.[19] Within the proposed class, the validity of an individual Dealer's claims—and the establishment of Ford's liability with respect to that Dealer—can only be determined from a highly specific and lengthy factual analysis for the part in question. Depending on the facts as they relate to individual Dealers, Ford could be liable to some but not to others. Thus, while each member of the proposed plaintiff class may rely on the same *theory* of recovery, resolution of these claims can only be decided on a Dealer-by-Dealer, part-by-part, sale-by-sale basis, rather than on a non-specific class-wide basis. Such highly specific factual and legal determinations are not consistent with the commonality requirement of a class action and,

indeed, undercut the purpose of the class action procedure.[20]

This result is consistent with applicable legal authority. When the resolution of a common legal issue is dependent upon factual determinations that will be different for each purported class plaintiff (and in this instance for each part sold), courts have consistently refused to find commonality and have declined to certify a class action. *See, e.g., Brooks v. Southern Bell Tel. & Tel. Co.,* 133 · F.R.D. 54, 56–58 (S.D.Fla.1990); *Werlein v. United States,* 746 F.Supp. 887, 912 (D.Minn. 1990), *vacated on other grounds,* 793 F.Supp. 898 (D.Minn.1992); *Daigle,* 133 F.R.D. at 603–04; *Marcial,* 122 F.R.D. at 531; *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 95 F.R.D. 168, 178 (D.Del.1982); *Letson v. Liberty Mut. Ins. Co.,* 90 F.R.D. 642, 642–43 (N.D.Ga.1981); *Fuzie v. Manor Care, Inc.,* 461 F.Supp. 689, 700 (N.D.Ohio 1977); *Wilensky v. Olympic Airways, S.A.,* 73 F.R.D. 473, 476 (E.D.Pa.1977).

In sum, given the individual proof necessary to establish Ford's liability with respect to each individual Dealer and for each individual sale and part, the commonality requirement of Rule 23(a)(2) is not met.[21]

---

**19.** Liberty Lincoln suggests that it is only damages that will differ from Dealer to Dealer. Liberty Moving Brief at 17. This assertion is incorrect. Individual determinations of retail price reasonableness go not just to damages, but also to the questions of Ford's liability. For instance, depending on the unique factual circumstances of each Dealer—for each part, the time of year, the particular customer and any promotional discounts—some Dealers may already be receiving reimbursement at the prevailing retail price for parts used in warranty repairs or may not be charging a "reasonable" retail price for parts. In such cases, Ford would not be liable under N.J.S.A. § 56:10–15.

**20.** Liberty Lincoln argues that commonality also exists because "the right of Ford to impose a '[D]ealer [P]arity [S]urcharge'" affects each Dealer. Liberty Reply brief at 3. This argument is incorrect because Liberty Lincoln is the *only* dealership in New Jersey which has asked Ford to depart from its Reimbursement Formula. *See* 26 April 1993 Tr. at 3, 14. Therefore, Liberty Lincoln appears to be also the only New Jersey dealership subject to the Dealer Parity Surcharge.

Liberty Lincoln also attempts to characterize this case as turning on the validity of Ford's

"methodology" in reimbursing Dealers for warranty repairs—an issue which it alleges applies equally to all class members. *See* 26 April 1993 Tr. at 5–8. This argument is misplaced because Ford's methodology does not *per se* violate Section 56:10–15 of the Franchise Practices Act. Instead, the Act is violated *only* if Ford's methodology results in a particular Dealer receiving less than the prevailing retail price, in that Dealer's specific geographic region, for parts used in warranty repairs. This determination can only be made on a Dealer-by-Dealer, part-by-part, sale-by-sale basis.

**21.** Even if Liberty Lincoln had established commonality to the extent required by Rule 23(a)(2), it could not carry the higher burden required to meet Fed.R.Civ.P. 23(b)(3).

Rule 23(b)(3) requires a finding that "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members," and that "a class action is *superior* to other available methods for the fair and *efficient adjudication* of the controversy." *Id.* (emphasis added). In making these findings, the court can consider, *inter alia*, "the difficulties likely to be encountered in the management of a class action." *Id.*

#### c. *Typicality*

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. *See* Fed.R.Civ.P. 23(a)(3). Even when there are actual differences between the representative parties and the rest of the class, a proposed class will meet Rule 23(a)(3) requirements if "the claim arises from the same events or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Grasty v. Amalgamated Clothing and Textile Wkrs. Union, etc.,* 828 F.2d 123, 130 (3d Cir.1987) (citing Newberg, *Class Actions,* § 3.15), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988); *see also Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988); *Zinberg,* 138 F.R.D. at 407. As the Circuit has indicated: "Rule 23 does not require that the representative plaintiffs have endured precisely the same injuries that have been sustained by class members, only that the harm complained of be common to the class." *Hassine,* 846 F.2d at 177 (emphasis omitted); *accord Zinberg,* 138 F.R.D. at 407.

The typicality requirement, however, is designed "to screen out class actions involving legal or factual positions of the representative class which are 'markedly different' from those of other class members." *Zinberg,* 138 F.R.D. at 406 (citing *Weiss,* 745 F.2d at 810 n. 36). Thus, the typicality requirement will not be met when:

> [T]he named plaintiffs' individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.

*Hassine,* 846 F.2d at 177 (quoting *Weiss,* 745 F.2d at 809 n. 36); *see also Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.), *cert. denied sub nom., Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

As discussed with regard to the commonality question, the claims of each Dealer in the proposed class are dependent upon highly specific factual circumstances and require individual determinations of liability. This is no less true for Liberty Lincoln, as the proposed class representative. Whether Liberty Lincoln's chosen retail rate is "reasonable," and whether Ford's Reimbursement Formula violates Section 56:10–15 of the Franchise Practices Act with respect to Liberty Lincoln, is not determinative of these same issues with regard to other Dealers in the proposed class. Among other considerations, Liberty Lincoln does not set retail rates for other Dealers, is geographically distinct from many of these dealers and is likely subject to a different standard of "reasonableness," as this term is used in the statute, than many of these dealers.

In other words, given Liberty Lincoln's highly individualized circumstances, Liberty Lincoln's claims are not typical of the claims of the class at large. As the court explained in *Brooks:* "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representative's claims are not typical of the proposed members' claims." 133 F.R.D. at 58;

In this case, common questions of law and fact in no way predominate individual questions. As discussed, determination of Ford's liability in this case can only be accomplished on a dealer-by-dealer basis, part-by-part, sale-by-sale basis, after an examination of facts and circumstances unique to each dealer. As case law indicates, when liability determinations are both individual and fact-intensive, certification under Rule 23(b)(3) is improper. *See, e.g., Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144, 154–55 (N.D.Cal.1991); *PBA Local No. 38,* 134 F.R.D. at 103–05; *Maguire,* 138 F.R.D. at 450–51; *Curley,* 728 F.Supp. at 1131.

Moreover, because there can be no clear scenario of liability without a detailed and individual factual analysis, the difficulties in managing the class suggested by Liberty Lincoln would be enormous. The analysis would need to be conducted not only Dealer-by-Dealer, but also part-by-part and sale-by-sale, determining for each part (1) what is the prevailing retail price in the relevant geographical area, (2) is the Dealer's price for that part reasonable and (3) what are the Dealer's damages with regard to that specific part. This determination will be sufficiently onerous for one plaintiff/Dealer, let alone a class of 38 or 123 plaintiffs. As discussed, in 1992, Liberty Lincoln alone performed over 6,000 warranty repairs. 26 April 1992 Tr. at 15. Management of such a class action case would be exceptionally difficult. *See Maguire,* 145 F.R.D. at 52–53; *Burkhalter,* 141 F.R.D. at 155; *PBA Local No. 38,* 134 F.R.D. at 105.

see also *Polich v. Burlington Northern, Inc,* 116 F.R.D. 258, 262 (D.Mont.1987); *Am/Comm Sys., Inc. v. American Tel. & Tel. Co.,* 101 F.R.D. 317, 321 (E.D.Pa.1984). Indeed, given the lack of commonality and highly individualized facts among proposed class members, no proposed Dealer could be said to have claims "typical" of the entire class. *See Retired Chicago Police Ass'n v. Chicago,* 141 F.R.D. 477, 486 (N.D.Ill.1992) ("commonality is a necessary condition of typicality").

Under such circumstances, the typicality requirement of Rule 23(a)(3) is not met. *Hassine,* 846 F.2d at 177; *Weiss,* 745 F.2d at 809 n. 36; *Eisenberg,* 766 F.2d at 786; *Alexander v. Gino's, Inc.,* 621 F.2d 71, 74 (3d Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *Brooks,* 133 F.R.D. at 58; *Daigle,* 133 F.R.D. at 603–04; *Polich,* 116 F.R.D. at 262. As the court explained in *Retired Chicago Police,* "common requests for relief ... or common legal theories do not establish typicality when the facts required to prove the claims are markedly different among class members." 141 F.R.D. at 486; *see also Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985, 989 n. 2 (N.D.Ill.1991).

### d. *Adequacy of Representation*

██ Rule 23(a)(4) also requires, as a prerequisite to class certification, that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R.Civ.P. 23(a)(4); *Maguire,* 145 F.R.D. at 52. Whether a named plaintiff is an adequate representative depends on two factors: (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation,[22] and (2) the plaintiff must not have interests antagonistic to those of the class. *Hassine,* 846 F.2d at 179; *Grasty,* 828 F.2d at 128; *Wetzel,* 508 F.2d at 247; *Maguire,* 138 F.R.D. at 449; *Zinberg,* 138 F.R.D. at 407; *Zlotnick,* 123 F.R.D. at 193.

The adequacy of representation requirement has been characterized as embodying concerns that

the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit,[23] and the relationship of the representative parties' interests to those of the class are such that there is not likely to be a divergence in viewpoint or goals in the conduct of the suit.

*Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977); *Shamberg,* 111 F.R.D. at 692; *Lewis v. Goldsmith,* 95 F.R.D. 15, 19 (D.N.J. 1982). A class representative "need not be the best of all possible representatives but rather one that will pursue a resolution of the controversy with the requisite vigor and in the interests of the class." *Peil,* 86 F.R.D. at 366; *see also Shamberg,* 111 F.R.D. at 695; *Landy v. Amsterdam,* 96 F.R.D. 19, 21 (E.D.Pa.1982).

Serious concern exists as to Liberty Lincoln's ability to serve as an adequate class representative in this case. First, despite the facts that this lawsuit has been pending for five months and that other Dealers in the proposed class have known of its existence, only Warnock has sought to join Liberty Lincoln.[24] Accordingly, Liberty Lincoln ap-

---

**22.** Ford has not challenged the adequacy of Liberty Lincoln's chosen counsel.

**23.** The vigorous prosecution requirement is not necessarily a separate requirement of Rule 23(a)(4), but "ordinarily is equated with the competence and experience of class counsel." *Grasty,* 828 F.2d at 129. The burden of demonstrating any inadequacies in the class representative's attorneys rests with the party opposing class certification. *Shamberg v. Ahlstrom,* 111 F.R.D. 689, 693 (D.N.J.1986); *Data Access,* 103 F.R.D. at 140.

**24.** Liberty Lincoln argues that "quite often, class members are not even aware of the pendency of the action until they receive the appropriate notice from plaintiff's counsel or in some instances, read notices to certified class members published in newspapers." Liberty Reply Brief at 7. This argument is unpersuasive in the context of this case. The Ford/Lincoln/Mercury dealerships in New Jersey compose a small community. In fact, Warnock has filed a separate suit after first being denied intervention in this suit, all without the publication or mailing of notice to class members. In addition, many of these Dealers are members of the NJADA and the FDA—associations which exist to keep their members abreast of significant developments in the car dealership business and which have moved to appear as *amicus curiae* in this case. Put simply, it is difficult to accept that the failure of other New Jersey Dealers either to join this litigation or to file their own suits is a result of ignorance. *See*

pears to be challenging a situation—namely, Ford's reimbursement policies and Reimbursement Formula—that other Dealers within its proposed class do not seek to challenge. In this regard, Liberty Lincoln's interests may well be adverse to some of the members of the proposed class.[25]

Second, concern also exists regarding Liberty Lincoln's financial ability to serve as a class representative. Liberty Lincoln has indicated, in a litigation currently pending in New Jersey State court, *see supra* n. 25, that its financial situation is questionable. For instance, Liberty Lincoln has stated it "is doubtful whether it can survive" if a competing Lincoln–Mercury Dealer is allowed to operate at a location eight miles away. *See* Ford Supp.Opp. Brief at 2. Although Liberty Lincoln's president, Robert Robertazzi ("Robertazzi"), has indicated he is "willing and able to personally guaranty the obligations of Liberty Lincoln" to be incurred in the prosecution of this litigation, *see* Robertazzi Supp.Aff., ¶ 3, Liberty Lincoln has not submitted documentation as to its own financial condition or the financial condition of Robertazzi. Given the inconsistent representations of adequate financial condition made by Liberty Lincoln, concern remains as to the ability of Liberty Lincoln to "foot the bill" for a class action. *See Brooks,* 133 F.R.D. at 58–59.

Although these concerns, standing alone, may not suffice to defeat class certification, in this case they merely add to a picture which already indicates that the prerequisites to class certification have not been met and class certification is inappropriate. Accordingly, the motion for class certification is denied in all respects. There is no basis for certifying either a statewide class consisting of the 123 Ford, Lincoln and Mercury Dealers in New Jersey or a statewide class consisting solely of the 38 Lincoln–Mercury Dealers in New Jersey.[26]

### B. *Leave To Amend the Complaint*

Liberty Lincoln seeks to amend the *Liberty* Complaint as follows:

(1) To incorporate the Dealer Agreement entered into between Ford and Liberty Lincoln with regard to the sale of Mercury vehicles and parts ("Point One");

(2) To note with some specificity the various amendments to both the Lincoln Dealer Agreement and the Mercury Dealer Agreement entered into between Ford and Liberty Lincoln ("Point Two");

(3) To broaden the proposed class to include Ford Dealers and franchisees in New Jersey, in addition to just Lincoln–Mercury Dealers and franchisees ("Point Three");

(4) To clarify that the activities complained of by Liberty Lincoln may violate not only the Franchise Practices Act, but

---

Mullane Aff., ¶¶ 6–8 (discussing newsletters and magazine articles published by FDA, from 1990–1992, regarding applicability of N.J.S.A. § 56:10–15 to issue of warranty reimbursement).

**25.** In addition, it appears Liberty Lincoln is currently maintaining a state action in New Jersey against Ford and to the detriment of a fellow Liberty–Lincoln dealership. *See* Ford Supp. Opp. Brief at 1–2. Liberty Lincoln is suing to prohibit Ford from appointing Regency Motors as a replacement Lincoln–Mercury dealer for a now-defunct Liberty–Mercury Dealership located within eight miles of Liberty Lincoln. *Id.* Liberty Lincoln concedes it has "taken a position which is antagonistic to that of Regency." Liberty Lincoln Supp. Reply Brief at 2. This conflict adds to the determination that Liberty Lincoln is, at best, a questionable class representative.

**26.** Because Liberty Lincoln has not carried its burden of establishing the Rule 23(a) prerequisites to a class action, it is unnecessary to deter-

mine whether a class action would be appropriate under Fed.R.Civ.P. 23(b)(2) or 23(b)(3). It is noted, however, that there appears to be no basis for certification under either Rule 23(b)(2) or Rule 23(b)(3). With regard to Rule 23(b)(3), common issues of law and fact do not predominate this case and certification of a class would be unmanageable. *See supra* at n. 21. With regard to Rule 23(b)(2), the Circuit has stated: "Precedent supports ... the view that an action for money damages may not be maintained as a Rule 23(b)(2) class action." *In re School Asbestos Litig.,* 789 F.2d 996, 1008 (3d Cir.) (citing cases), *cert. denied sub nom., Celotex Corp. v. School Dist. of Lancaster,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Although in this case Liberty Lincoln does seek declaratory relief, the sought-after declaration appears to exist to provide a basis for the recovery of damages, equal to the amount which Ford allegedly should have reimbursed Dealers. Such a case is not properly certified under Rule 23(b)(2). *See School Asbestos,* 789 F.2d at 1008.

may otherwise be unlawful ("Point Four");

(5) To add a third count alleging that the activities of Ford constitute a breach of its implied covenant of good faith and fair dealing ("Point Five");

(6) To make other unspecified language changes ("Point Six"); and

(7) To amend the habendum clause to seek judgment that the within suit is properly maintainable as a class action under Rule 23 ("Point Seven").

Lincoln Moving Brief at 8–9.

 Federal Rule of Civil Procedure 15(a) provides that a plaintiff may, as a matter of right, amend the complaint one time before a responsive pleading is served.[27] After the complaint has been amended once or after a responsive pleading has been served, however, a party may amend the complaint only upon leave of the court or written consent of the adverse party. The decision to grant or deny a movant's request to amend is within the discretion of the district court; however, the court must state the reasons justifying its decision. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Coventry v. United States Steel Corp.,* 856 F.2d 514, 519 (3d Cir.1988); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984).

The Third Circuit has held that delay alone is insufficient for denial of a motion to amend. *Howze,* 750 F.2d at 1212 (citing *Cornell & Co., Inc., v. Occupational Safety and Health Review Comm'n,* 573 F.2d 820 (3d Cir.1978)). "Rather, the touchstone is whether the non-moving party will be prejudiced if the amendment is allowed." *Id.* Prejudice involves the serious impairment of the defendant's ability to present its case. *Dole v. Arco Chem. Co.,* 921 F.2d 484, 488 (3d Cir.1990).

 Because there appears to be no prejudice to Ford, Liberty Lincoln may amend the *Liberty* Complaint to include Points One, Two, Four and Five. Leave to amend as to Point Six is denied because Liberty Lincoln has failed to specify the nature or content of the language changes requested. Leave to amend is also denied as to Points Three and Seven because, as discussed above, class action certification is not appropriate, regardless of whether the proposed class is composed of all 123 Lincoln, Mercury and Ford Dealers in New Jersey or only the 38 Lincoln–Mercury Dealers.

### C. Motion For Consolidation

 A district court has "inherent power to 'control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants.' " *United States v. Kramer,* 770 F.Supp. 954, 957 (D.N.J.1991) (quoting *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)). Rule 42(a) of the Federal Rules of Civil Procedure supplements this power. Rule 42(a) provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a).

 Rule 42(a) gives the district court "broad powers to consolidate actions involving *common questions of law or fact* if, in its discretion, such consolidation would facilitate the administration of justice." *Waste Distillation Tech., Inc. v. Pan American Resources, Inc.,* 775 F.Supp. 759, 761 (D.Del. 1991) (citing *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.,* 339 F.2d 673, 675 (3d Cir.1964), *cert. denied,* 382 U.S. 812, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965) (emphasis added)). Consolidation is appropriate in order to avoid

---

**27.** Rule 15(a) provides, in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a).

unnecessary costs and/or delay, *In re DAK Mfg. Corp.*, 73 B.R. 917, 922 (Bankr.D.N.J 1987), and to promote judicial economy. *Montague v. United States*, Nos. 90–6783, 90–6784, 1990 WL 181461, *1, 1990 U.S. Dist. LEXIS 15591, *1 (E.D.Pa. 16 Nov. 1990); *Francesco v. White Tiger Transp. Co.*, 679 F.Supp. 456, 458 (M.D.Pa.1988).

■■■ The mere existence of common issues, however, does not require consolidation. *Waste Distillation*, 775 F.Supp. at 761; *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F.Supp. 656, 661 (D.Del.1990); *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D.Del.1981). The savings of time and effort gained through consolidation must be balanced against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions. *Waste Distillation*, 775 F.Supp. at 761; *Dentsply*, 734 F.Supp. at 661; *Rohm & Haas*, 525 F.Supp. at 1309.

■■■ Specifically, the mere fact that two cases assert *similar theories of recovery* does not constitute a "common question of law" so as to warrant consolidation. *Liqui–Box Corp. v. Reid Valve Co.*, Nos. 85–2355, 87–2098, 1989 WL 431980, *1, 1989 U.S.Dist. LEXIS 17189, *3 (W.D.Pa. 15 Sept. 1989); *Flintkote Co. v. Allis–Chalmers Corp.*, 73 F.R.D. 463, 465 (S.D.N.Y.1977). As one court has stated: "Where the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues." *Liqui–Box*, 1989 WL 431980, *1, 1989 U.S.Dist. LEXIS 17189 at *3; *see also Flintkote*, 73 F.R.D. at 465.

Warnock argues that consolidation of the *Warnock* Action with the *Liberty* Action is appropriate for the following reasons:

Judicial economy dictates that the instant matters be consolidated. Warnock's claims as set forth in [the *Warnock* ] Complaint and those which are the subject of [the *Liberty* Action] raise identical questions of law *and* fact. Ford's policies concerning parts warranty reimbursement are uniform and do not vary from dealer to

dealer. In both instances, the parties' claim is premised in N.J.S.A. 56:10–15 and they each seek, amongst other things, a judgment declaring that the parts warranty reimbursement policy established by [Ford] is a violation of the [Franchise Practices] Act. In both instances, the parties further seek the recovery of compensatory and other damages, which although they vary from dealer to dealer, would be calculated similarly.

Warnock Moving Brief at 9 (emphasis in original).

Consolidation of the *Warnock* Action with the *Liberty* Action is denied for the same reasons Liberty Lincoln's motion for class certification was denied. Although both Liberty Lincoln and Warnock (1) base their actions on N.J.S.A. 56:10–15 and (2) allege that Ford's warranty reimbursement policy violates this section, in each case liability must be determined on a Dealer–by–Dealer, part-by-part, sale-by-sale basis, with consideration of facts that are highly specific to individual dealers. It simply is not enough that the two actions allege the same theory of recovery. *Liqui–Box*, 1989 WL 431980, *1, 1989 U.S.Dist. LEXIS 17189 at *3; *Flintkote*, 73 F.R.D. at 465.

As discussed, the uniqueness of the factual issues in these cases arises from the facts that (1) the "prevailing retail price" of a particular part is not uniform among dealers and (2) the "reasonableness" determination called for by the statute will vary from Dealer to Dealer in relation to their geographical location and to the customer, part and sale. *See supra* at pp. 75–77. Accordingly, a determination of whether Ford and its warranty reimbursement policy violate N.J.S.A. § 56:10–15 can only be determined after each Dealer has submitted detailed proof, for each part, concerning its individual pricing practices and the other necessary issues already discussed.

Given the disparate factual analyses and sources of proof required by the claims in the *Warnock* Action and the *Liberty* Action, consolidation is not appropriate.[28] Given that

---

28. In effect, because the proposed class in the *Warnock* Action is exactly the same class which was denied certification in the *Liberty* Action, it is assumed that consolidation, if it were to occur, would concern only Liberty Lincoln and Warnock, rather than the entire class of Ford, Lin-

Liberty Lincoln alone performed over 6,000 warranty repairs in 1992, and each part replacement would require individual analysis, consolidation would not promote judicial economy and would result in delay and in confusion of the relevant factual issues in each case. *Liqui–Box*, 1989 WL 431980, *2, 1989 U.S.Dist. LEXIS 17189 at *3; *see also Flintkote*, 73 F.R.D. at 465. The motion for consolidation is denied.[29]

D. *Motions For Leave to Appear Amicus Curiae*

 District courts have broad discretion to appoint *amicus curiae*. *United States v. Ahmed*, 788 F.Supp. 196, 198 n. 1 (S.D.N.Y.), *aff'd*, 980 F.2d 161 (2d Cir.1992); *United States v. Gotti*, 755 F.Supp. 1157, 1158–59 (E.D.N.Y.1991); *United States v. Louisiana*, 751 F.Supp. 608, 620 (E.D.La. 1990); *Pennsylvania Environ. Defense Found. v. Bellefonte Borough*, 718 F.Supp. 431, 434 (M.D.Pa.1989) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir.1982)); *Yip v. Pagano*, 606 F.Supp. 1566, 1568 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir.), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986). Nevertheless, it has been suggested:

> At the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level where such participation has become standard procedure.

*Yip*, 606 F.Supp. at 1568; *accord News & Sun–Sentinel Co. v. Cox*, 700 F.Supp. 30, 32 (S.D.Fla.1988); *Donovan v. Gillmor*, 535 F.Supp. 154, 159 (N.D.Ohio 1982), *appeal dism'd*, 708 F.2d 723 (6th Cir.1982); *Leigh v. Engle*, 535 F.Supp. 418, 422 (N.D.Ill.1982).

A court may grant leave to appear *amicus curiae* if "it deems the proffered information timely and useful." *Yip*, 606 F.Supp. at 1568; *accord Louisiana*, 751 F.Supp. at 620. As the Circuit has stated: "[P]ermitting persons to appear in court . . . as friends of the court . . . may be advisable where third parties can contribute to the court's understanding." *Harris v. Pernsley*, 820 F.2d 592, 603

(3d Cir.1987) (citing *Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1125–27 (2d Cir.1983), *cert. denied sub nom., Althiser v. New York State Dep't of Correctional Services*, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984)), *cert. denied sub nom., Castille v. Harris*, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); *see also Gotti*, 755 F.Supp. at 1158 (*amicus curiae* serve "to provide supplementary assistance to existing counsel and insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision"); *American Lung Ass'n v. Kean*, 670 F.Supp. 1285, 1287 (D.N.J.1987) (*amicus curiae* granted when court desired applicant's "insights" into problems presented).

When a court determines the parties are already adequately represented and participation of a potential *amicus curiae* is unnecessary because it will not further aid in consideration of the relevant issues, leave to appear has been denied. *See, e.g., American College of Obstetricians and Gynecologists, Pennsylvania Section v. Thornburgh*, 699 F.2d 644, 645 (3d Cir.1983); *Ahmed*, 788 F.Supp. at 198 n. 1; *Gotti*, 755 F.Supp. at 1158–59; *Elm Grove v. Py*, 724 F.Supp. 612, 613 (E.D.Wis.1989); *News & Sun–Sentinel*, 700 F.Supp. at 31–32; *United States v. Yonkers Contracting Co.*, 697 F.Supp. 779, 781 (S.D.N.Y.1988); *see also Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir.1970).

 When the party seeking to appear as *amicus curiae* is perceived to be an interested party or to be an advocate of one of the parties to the litigation, leave to appear *amicus curiae* should be denied. *Gotti*, 755 F.Supp. at 1158–59; *Yip*, 606 F.Supp. at 1568; *Leigh,* 535 F.Supp. at 422. As the court stated in *Yip:* "Where a petitioner's attitude toward a litigation is patently partisan, he should not be allowed to appear as *amicus curiae.*" 606 F.Supp. at 1568; *see also Gotti*, 755 F.Supp. at 1159 (rejecting *amicus curiae* application for its failure provide an "objective, dispassionate, neutral discussion of the issues").

coln and Mercury Dealers in New Jersey defined in the *Warnock* Complaint.

29. To the extent that certain discovery may be relevant to both the *Warnock* Action and the *Liberty* Action, coordination of discovery can be addressed, if necessary, as the need arises.

In this case, NJADA moves to appear *amicus curiae* "for the purpose of presenting the views of its members with respect to the issue of warranty reimbursement and the ramifications of that issue for all motor vehicle dealers and consumers in the state." NJADA Moving Brief at 1. According to NJADA:

> [It] has been involved with the warranty reimbursement issue since its inception two decades ago. Over this period, it has developed insight into the issue, its history and the potential effect of enforcement and non-enforcement of N.J.S.A. 56:10–15 on the automotive industry and consumers. Leave to appear *amicus curiae* will enable NJADA to present its knowledge, insight and viewpoint to the Court in this potential precedent setting case.

NJADA Moving Brief at 2–3.

FDA moves to appear *amicus curiae* for the "purpose of presenting to the Court the collective experience of its membership of over 1700 automobile dealers." FDA Moving Brief at 1. According to FDA:

> [It] seeks to bring to this Court's attention the experiences of its members that relate to the warranty reimbursement policies at issue in this matter, as well as other information, such as surveys and polls conducted by [FDA] that are relevant. In this way, the Court can have a complete picture of Ford dealers' experiences with Ford concerning reimbursement for warranty work.

*Id.* at 1.

The motions of NJADA and FDA to appear *amicus curiae* are denied. At best, the information and arguments presented by NJADA and FDA merely repeat the arguments already submitted by Liberty Lincoln and Warnock. To the extent the information and arguments presented by NJADA and FDA are not repetitious, they are irrelevant to the determination of the issues class certi-

fication and consolidation issues.[30] In short, Liberty Lincoln and Warnock have capably briefed the relevant issues; additional input from NJADA or FDA is neither helpful nor necessary. *Obstetricians,* 699 F.2d at 645; *Ahmed,* 788 F.Supp. at 198 n. 1; *Gotti,* 755 F.Supp. at 1158–59; *Elm Grove,* 724 F.Supp. at 613; *News & Sun–Sentinel,* 700 F.Supp. at 31–32; *Yonkers Contracting,* 697 F.Supp. at 781.

*Conclusion*

For the reasons stated above, the motion by Liberty Lincoln for class certification is denied and the motion for leave to amend the *Liberty* Complaint is granted in part and denied in part. The motion by Warnock for consolidation of the *Warnock* Action with the *Lincoln* Action is denied. Finally, the motions by NJADA and FDA for leave to appear as *amicus curiae* are denied.

---

**30.** In its reply papers, NJADA clarifies its position as follows:

> NJADA wishes to be heard on the underlying issue in this case—whether Ford is complying with N.J.S.A. 56:10–15, either by its uniform markup on warranty parts or by its special charge to dealers, like Liberty Lincoln Mercury, that demand full retail price. NJADA wishes to be heard whenever this issue is before the Court, be it in connection with a motion to dismiss, a motion for summary judgment, the trial or otherwise.

NJADA Reply Brief at 1. This request is denied in its entirety. The assistance of NJADA in interpreting the relevant state statute—N.J.S.A. § 56:10–15—is not required.