## In re CONSOLIDATED PARLODEL LITIGATION

Civil Action No. 95–1935.

United States District Court,
D. New Jersey.

Feb. 6, 1998.

---

8. *See* note 6 *supra.*

Ellen Relkin, P.C., South Orange, NJ, Steven R. Fineman, Karen J. Mandel, Weitz & Luxenberg, P.C., New York City, Jeffrey Lutsky, Stradley, Ronan, Stevens & Young, Cherry Hill, NJ, for Plaintiffs.

Jeffrey A. Peck, Shanley & Fisher, Morristown, NJ, Joe G. Hollingsworth, Spriggs & Hollingsworth, Washington, DC, for Defendant.

## OPINION

ORLOFSKY, District Judge.

Sixteen female Plaintiffs, some joined by their husbands, have filed fourteen separate actions alleging that they were injured as a result of taking the prescription drug Parlo-

del. Plaintiffs hale from a variety of states across the country[1] and allege a variety of injuries, including strokes, heart attacks and seizures, occurring from 1988 to 1994. Defendant, Novartis Pharmaceuticals Corporation ("NPC"), formerly known as Sandoz Pharmaceuticals Corporation, designed, manufactured, marketed and distributed Parlodel.

Following transfer of several of these cases from the United States District Court for the Eastern District of New York, the Honorable Joel B. Rosen, United States Magistrate Judge, consolidated these cases solely for the limited purpose of discovery. Plaintiffs have moved for consolidation of these cases for trial and a determination that each case is governed by New Jersey law. For the reasons set forth below, Plaintiffs' motion for consolidation will be denied. Plaintiffs' motion for choice of law will be denied without prejudice to the refiling of such a motion by each Plaintiff on a case-by-case basis.

## I. BACKGROUND

Plaintiffs allege generally that NPC designed, manufactured, obtained regulatory approval for, marketed and distributed the drug Bromocriptine under the brand name Parlodel. One of the indications for the use of Parlodel was the prevention of post-partum lactation ("PPL") in women following childbirth. Essentially, women who did not want to breast feed could take Parlodel to suppress lactation.

Plaintiffs each allege that they took Parlodel to prevent PPL and suffered injuries as a result. Plaintiffs have categorized their injuries as follows: 9 women suffered strokes, 2 women suffered seizures, 3 women suffered strokes and seizures, and 2 women suffered heart attacks. *See* Plaintiffs' Mem. at 5–6. Plaintiffs assert various theories of recovery centered on strict products liability, negligence, breach of implied warranty, breach of express warranty and fraud. Both the causes of action and the factual premises for the claims, however, vary somewhat among the actions. *Compare, e.g., Johnson v. Sandoz Pharmaceuticals Corp.,* Civ. Action. No. 95–1935 (alleging civil conspiracy), *with Parnell v. Sandoz Pharmaceuticals Corp.,* Civ. Action. No. 96–4491 (alleging violations of the Food and Drug Act, 21 U.S.C. § 352), *with Nelson v. Sandoz Pharmaceutical Corp.,* Civ. Action No. 95–6527 (alleging both civil conspiracy and violations of the Food and Drug Act, 21 U.S.C. § 352). Several of the complaints also include claims by husbands of injured women for loss of consortium.

Five actions were originally filed in the United States District Court for the District of New Jersey. *See* Civ. Action Nos. 95–1936, 95–1935, 95–6527, 95–4890, 95–2321. Nine actions were originally filed in the United States District Court for the Eastern District of New York. *See* Civ. Action Nos. 95–395, 95–516, 95–1629, 95–2150, 95–4319, 96–1450, 96–2269, 96–2632, 96–4052.[2] The New York Actions were transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). *See* Certification of Ellen Relkin, Ex. B (containing transfer orders in each case). By order dated April 22, 1996, Magistrate Judge Rosen consolidated these actions for the limited purpose of discovery.

## II. CONSOLIDATION

 Plaintiffs now move to consolidate all fourteen of their cases for trial. The Federal Rules of Civil Procedure provide in relevant part:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it

---

1. Plaintiffs are: Carole and Joseph Bendet of Missouri, Elizabeth and Randall Brasher of Alabama, Ellen and Matthew Eve of Indiana, Debra and Lazarus Douglas of North Carolina, Sharen and Randy Dunn of North Carolina, Melissa and Mark Globetti of Alabama, Donna Hall of Oklahoma, Marsha and David Hill of Texas, Fernice and Richard Johnson of Kentucky, Carolyn and Leroy Kerr of Missouri, Pamela and Bradley Kittelson of Minnesota, Tina and Michael Klein of California, Lisa and David Nelson of Indiana, Angela and Clint Parnell of Florida, Ruby Quinn of Alabama and Lisa Soldo of Pennsylvania.

2. Two of these actions, Civ. Action. Nos. 96–1907 and 96–2327, were each filed by two Plaintiffs so that eleven Plaintiffs filed a total of nine actions in the Eastern District of New York.

may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). The moving parties, in this case Plaintiffs, bear the burden of proof on a motion for consolidation. *In re Repetitive Stress Injury Litigation ("In re RSI Litig.")*, 11 F.3d 368, 373 (2d Cir.1993); *Schneck v. International Business Machines Corp.*, 1996 U.S. Dist. LEXIS 10126, *3 (D.N.J. Jun. 24, 1996).

■ A common question of law or fact shared by all of the cases is a prerequisite for consolidation. *See* Fed.R.Civ.P. 42(b); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 80 (D.N.J.1993); *Schneck*, 1996 U.S. Dist. LEXIS 10126 at *3. "The mere existence of common issues, however, does not require consolidation." *Liberty Lincoln Mercury*, 149 F.R.D. at 81; *Schneck*, 1996 U.S. Dist. LEXIS 10126 at *3; *see Easton & Co. v. Mutual Benefit Life Insurance Co.*, 1992 WL 448794, *4 (D.N.J. Nov. 4, 1992) (whether cases present a common question of law or fact is only a "threshold" requirement). Once a common question has been established, the decision to consolidate rests in the sound discretion of the district court. *See Liberty Lincoln Mercury*, 149 F.R.D. at 80; *Easton*, 1992 WL 448794 at *4; *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir.1993).

■ In exercising its discretion, a court should weigh "the interests of judicial economy against the potential for new delays, expense, confusion, or prejudice." *Easton*, 1992 WL 448794 at *4. Other courts have described this balance as:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple law suits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir.1982), *cert. denied*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983);

*accord Cantrell*, 999 F.2d at 1011; *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990); *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir.1985). In this analysis, however, "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Johnson*, 899 F.2d at 1285.

■ Plaintiffs in these cases have met their threshold burden by demonstrating that certain questions of fact are common to each case. Each case will involve evidence regarding, for example, NPC's preliminary testing of Parlodel, its various representations to the Food and Drug Administration and its national marketing practices. *See* Plaintiff's Mem. at 3. Thus, there exist common questions of law or fact which require that I balance the advantages and disadvantages of consolidation. *See Liberty Lincoln Mercury*, 149 F.R.D. at 80–81.

■ Even where cases involve some common issues of law or fact, consolidation may be inappropriate where individual issues predominate. *See Henderson v. National Railroad Passenger Corp.*, 118 F.R.D. 440 (N.D.Ill.1987) (denying motion to consolidate because "the individual questions of fact and law in each case outweigh the common"); *Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459 (E.D.Mich.1985) (citing, e.g., *Shump v. Balka*, 574 F.2d 1341 (10th Cir.1978); *Molever v. Levenson*, 539 F.2d 996 (4th Cir.), *cert. denied*, 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 625 (1976)). This is frequently an issue in products liability actions, as courts have noted in the class-action context:

> In products liability actions individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses ... may depend on facts peculiar to each plaintiff's case.

*In re Northern District of California, Dalkon Shield IUD Products Liability Litigation* ("*In re IUD Litig.*"), 693 F.2d 847, 853 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *accord In re American Medical Systems, Inc.,* 75 F.3d 1069, 1084–85 (6th Cir.1996). Plaintiffs boldly contend that "[t]he Court should completely disregard Defendant's citations [to] ... class action certification cases" and that those cases "have no place in the consolidation analysis." Plaintiffs' Reply at 7. In *Hasman,* however, the court explicitly found that the analysis in *In re IUD Litig.* was "applicable" in the context of consolidation pursuant to Rule 42. *See Hasman,* 106 F.R.D. at 461. As Justice Holmes noted: "The life of the law has not been logic: it has been experience." Oliver Wendell Holmes, Jr., *The Common Law* 1 (1881). I need not ignore the relevant history of products liability litigation merely because it occurred in the class-action context.

In *Hasman,* the court denied a motion to consolidate three products liability actions alleging injuries caused by an intrauterine device ("IUD"). In that litigation, "[t]he three cases involve[d] separate and unique medical, social, and sexual histories peculiar to each woman and her sexual partners." *Id.* at 460. Thus, the court found that "[c]onsolidation would make trial confusing, unmanageable and perhaps inequitable," and that "[t]he desire for judicial efficiency would not be served, since the unique details of each case would still need to be presented to the jury." *Id.* The court concluded that "[w]hen cases involve some common issues but individual issues predominate, consolidation should be denied." *Id.* at 461.

 In these fourteen cases, the importance and intricacy of issues specific to each Plaintiff overshadow the common questions. *See In re IUD Litig.,* 693 F.2d at 854 ("on the issues of negligence, strict products lia-

bility, adequacy of warnings at relevant time periods, breach of warranty, fraud and conspiracy, commonality begins to be obscured by individual case histories"). NPC points to two sets of issues in particular which vary with each individual Plaintiff: (1) specific causation; and (2) the representations made by NPC to each Plaintiff's treating physician. *See* Defendant's Opp. at 15–17.

NPC contests each Plaintiff's ability to prove that her specific injuries were caused by Parlodel. *See* Defendant's Opp. at 16; Affidavit of Thomas R. Browne, III, M.D., et al., Ex. L. to Certification of Joe G. Hollingsworth, at ¶ 31 ("the post-partum period itself, in the absence of Parlodel use, is a high-risk interval for some of these illnesses").[3] In *In re RSI Litig.,* the Second Circuit issued a writ of mandamus reversing Judge Weinstein's consolidation of 44 separate Repetitive Stress Injury ("RSI") cases which alleged various injuries from the use of keyboards and other ergonomic devices. The Second Circuit observed that "the plaintiffs presumably have the usual wide variety of individual health conditions and problems that are found in any similar sample of persons that might be relevant to the claimed injuries." *In re RSI Litig.,* 11 F.3d at 373. Consequently, the court determined that consolidation was inappropriate because "the sole common fact among these cases is a claim of injury of such generality that it covers a number of different ailments for each of which there are numerous possible causes other than the tortious conduct of one of the defendants." *Id.*

I find the Second Circuit's reasoning applicable and persuasive in the present context. Plaintiffs in these fourteen cases presumably have diverse medical histories and allege, and therefore must present evidence to a jury of dramatically different injuries to the brain and to the heart. *See* Plaintiffs' Mem.

---

3. Causation is, of course, an essential element of each Plaintiff's claim. *See, e.g., Habecker v. Copperloy Corp.,* 893 F.2d 49, 54 (3d Cir.1990). Each Plaintiff must prove both general and specific causation. *See DeLuca v. Merrell Dow Pharmaceuticals,* 911 F.2d 941, 958 (3d Cir.1990). "General causation addresses whether products of the same nature as defendant's product are capable of causing the type of injuries alleged

here; specific causation addresses whether defendant's product more likely than not caused injuries in this particular case." *Heller v. Shaw Industries, Inc.,* 1997 WL 535163, *6 (E.D.Pa. Aug.18, 1997) (citing *Rutigliano v. Valley Business Forms,* 929 F.Supp. 779, 783 (D.N.J.1996), *aff'd sub nom. Valley Business Forms v. Graphic Fine Colors, Inc.,* 118 F.3d 1577 (3d Cir. June 27, 1997)).

at 5–6. This evidence is specific and unique to each Plaintiff's case. Thus, it is clear that individual issues in these cases will predominate. *See Liberty Lincoln Mercury*, 149 F.R.D. at 81 (refusing to consolidate actions by car dealers against car manufacturer based on manufacturer's warranty reimbursement policy because "liability must be determined on a Dealer–by–Dealer, part-by-part, sale-by-sale basis, with consideration of facts that are highly specific to individual dealers").

■ NPC also emphasizes that its marketing practices, which are critical issues in each Plaintiff's case, varied by region and over time. Plaintiffs allege that NPC instructed its sales force to misrepresent salient facts to physicians and to "overpromote" Parlodel. *See* Plaintiffs' Reply at 3–4. Moreover, Plaintiffs acknowledge that NPC will probably assert the Learned Intermediary Doctrine as its "main defense." Plaintiffs' Brief at 13. That doctrine provides that the duty of prescription drug manufacturers to warn extends only to physicians and not to patients. *See Niemiera by Niemiera v. Schneider*, 114 N.J. 550, 559, 555 A.2d 1112 (1989). Thus, each case will require evidence of the particular representations made by NPC to the particular treating physician.

Plaintiffs and their physicians, however, reside in eleven different states across the continental United States (e.g., from Florida to California to Minnesota to Texas), *see* Plaintiffs' Mem. at 5–6, while NPC's sales force and marketing practices varied by geographic region and over time, *see* Defendant's Opp. at 18. Consequently, these key issues will hinge on copious evidence unique to each Plaintiff's case.

In *In re IUD Litig.*, 693 F.2d 847, the court reversed the district court's certification of a products liability class under Rule 23(b)(3). In considering the predominance of individual versus common issues, the court found that the breach of warranty claims were predominantly individual because:

[the] warranties consisted mainly of various medical journal and medical trade-show advertisements over a four-year period. Different types of advertisements were printed on different dates in different journals. Different doctors read various periodicals. The advertisements were made to and read not by plaintiffs but by their doctors.

*Id.* at 856; *compare In re Master Key Antitrust Litigation*, 528 F.2d 5, 15 n. 15 (2d Cir.1975) (rejecting argument that "there may be geographic marketing variations which make a consolidated national liability determination prejudicial" where the court had already rejected a particularized injury defense).

Similarly, in *In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir.1996), the Sixth Circuit issued a writ of mandamus ordering the district court to decertify a class in a medical device products liability action in part because individual issues predominated. The suits involved ten different models of penile prostheses sold over a period of years. The court noted that "each plaintiff's urologist would also be required to testify to determine what oral and written statements were made to the physician, and what he in turn told the patient, as well as to issues of reliance, causation and damages." *Id.* at 1081 (citing *In re IUD Litig.*, 693 F.2d at 854); *see also id.* (the "claims of strict liability, fraudulent misrepresentation to both the FDA and the medical community, negligent testing, design and manufacture, and failure to warn will differ depending upon the model and year [the allegedly defective product] was issued").[4]

Thus, because of the geographic and temporal differences in NPC's marketing program, evidence of NPC's liability for its marketing practices will be specific to each Plaintiff. In addition, the admission of evidence of a misrepresentation by one sales person to one physician in a consolidated trial could significantly prejudice NPC's defense of other claims where no such evidence

---

**4.** It is unclear, to say the least, whether this Court even has authority to compel the testimony at trial of the treating physicians who reside in the home-states of each Plaintiff. *See* Fed.

R.Civ.P. 45(b)(2). As noted, the sixteen Plaintiffs reside in eleven different states across the continental United States. None of the Plaintiffs reside in New Jersey.

was admitted. Therefore, I conclude that the predominance of individual issues, in particular, causation and marketing evidence, in these fourteen cases prevent Plaintiffs from meeting their burden on this motion to consolidate under Rule 42.

■ Plaintiffs emphasize considerations of judicial economy and the savings in judicial resources to be gained from a consolidated trial. However, "[t]he benefits of efficiency can never be purchased at the cost of fairness." *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350 (2d Cir.1993). Citing "the dangers of a streamlined trial process in which testimony must be curtailed and jurors must assimilate vast amounts of information," the Second Circuit has explained that "[t]he systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation." *Malcolm*, 995 F.2d at 350 (quoting *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 853 (2d Cir.1992)). A consolidated trial of these fourteen cases would compress critical evidence of specific causation and marketing to a level which would deprive NPC of a fair opportunity to defend itself.

Moreover, the economies of consolidation would be significantly reduced in these cases by the need to apply different law to each Plaintiff's claim, and even to individual issues within each claim. *See infra* Part III; *In re Ford Motor Co. Ignition Switch Products Liability Litigation ("In re Ford Litig.")*, 174 F.R.D. 332, 349 (D.N.J.1997) (declining to certify a products liability class under Fed.R.Civ.P. 23 in part because "the district judge would face an impossible task of instructing a jury on the relevant law [of many different jurisdictions]") (quoting *In re American Medical Systems, Inc.*, 75 F.3d 1069). No doubt the prospect of one consolidated trial, instead of fourteen separate trials, presents a happy solution to any busy trial judge. In this instance, however, it would also create a nightmare of jury confusion which would be prejudicial to Plaintiffs and NPC.

Consolidation of these fourteen cases may well entail application of the laws of all eleven states in which Plaintiffs reside. *See In re Ford Litig.*, 174 F.R.D. at 349 (finding that, under New Jersey's choice of law rules, law of plaintiffs' states governed products liability actions arising from all fifty states). Indeed, the laws of different states may govern different issues within each case. *See infra* Part III. Consolidation would require the jury not only to assimilate and analyze all of the complicated testimony in each case, but also to apply their factual findings to a host of complex legal principles within each issue and each case. This would be unfair to the jury and to the parties. *See Malcolm*, 995 F.2d at 352 (even where trial court took precautions, "the shear breadth of the evidence made these precautions feckless in preventing jury confusion" and ultimately "the jury thr[ew] up its hands in the face of a torrent of evidence"). For these reasons, Plaintiffs' motion for consolidation will be denied.

## III. CHOICE OF LAW

■ Plaintiffs also move for the application of New Jersey law to all fourteen actions. New Jersey's choice of law rules govern those cases originally filed in New Jersey. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Chicosky v. Presbyterian Medical Center*, 979 F.Supp. 316, 322 (D.N.J.1997). New York's choice of law rules apply to those actions which were originally filed in the Eastern District of New York and transferred to this Court pursuant to 28 U.S.C. § 1404(a). *See Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *In re Ford Litig.*, 174 F.R.D. at 348.

■ New Jersey's choice of law rules incorporate doctrine of depecage whereby "the laws of different states may apply in the same case to different issues in the case." *See In re B.S. Livingston & Co., Inc.*, 186 B.R. 841, 863 (D.N.J.1995) (quoting *Pollock v. Barrickman*, 610 F.Supp. 878, 879 (D.N.J. 1985)). New York also follows this rule. *See Hutner v. Greene*, 734 F.2d 896, 901 (2d

448

Cir.1984); *Gimbel v. Feldman*, 1996 WL 342006 (E.D.N.Y. Jun. 17, 1996).

I have concluded that these fourteen cases must be tried individually. *See supra* Part II. Because each issue in each case requires a separate choice of law analysis, I will not proceed to determine the applicable law for each case at this time, but instead will leave those decisions for adjudication in each case. *But see In re Ford Litig.*, 174 F.R.D. at 348–49 (finding in products liability actions that laws of plaintiffs' home states governed despite refusing to certify class).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for consolidation will be denied. Plaintiffs' motion for the application of New Jersey law in all cases will be denied without prejudice to each individual Plaintiff's right to refile such a motion. The Court will enter an appropriate Order.

## ORDER

This matter having come before the Court on the motion of Plaintiffs for consolidation of these cases for trial and to determine choice of law, Steven R. Fineman, Esq., and Karen J. Mandel, Esq., Weitz & Luxenberg, P.C., Ellen Relkin, Esq., P.C., and Jeffrey Lutsky, Esq., Stradley, Ronan, Stevens & Young, appearing on behalf of Plaintiffs, and Jeffrey A. Peck, Esq., Shanley & Fisher, and Joe G. Hollingsworth, Esq., Spriggs & Hollingsworth, appearing on behalf of Defendant, Novartis Pharmaceutical Corporation; and,

The Court having considered Plaintiffs' motion for consolidation and to determine choice of law and the papers filed in support thereof, Defendant's opposition thereto and the papers filed in support thereof, and Plaintiff's reply and the papers filed in support thereof, for the reasons set forth in the Court's OPINION, filed concurrently with this ORDER;

IT IS, on this 6th day of February, 1998, hereby ORDERED that Plaintiffs' motion for consolidation is DENIED; and,

IT IS FURTHER ORDERED that Plaintiffs' motion for the application of New Jersey law in all cases is DENIED WITHOUT PREJUDICE to each individual Plaintiff's right to refile such a motion on a case-by-case basis.